(No. 13541.—Judgment affirmed.)

JOHN BARTON PAYNE, Director General of Railroads, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(EDWARD C. KOCH, Defendant in Error.)

*Opinion filed February 15, 1921.*

1. WORKMEN'S COMPENSATION—*what determines whether employee is engaged in interstate commerce.* For an employee to be engaged in interstate commerce at the time of receiving an injury he must at the time be engaged in interstate transportation or in work so closely related to it as to be practically a part of it.

2. SAME—*burden is on railroad company to prove employee was engaged in interstate commerce.* In a proceeding under the Compensation act by an injured employee against a railroad company engaged in both intrastate and interstate commerce, the burden is on the defendant, if it seeks to avoid liability under that act, to show the work of the employee at the time of the injury was in interstate commerce, and in the absence of any showing it will be assumed that the work was within the terms of the act.

3. SAME—*employee is not employed after leaving his duties and the premises of his employer.* An employee who has left the premises of his employer and is no longer fulfilling any duty of his employment is not employed within the meaning of the Compensation act.

4. SAME—*when particular interstate employment ceases.* The particular interstate employment of a train crew in charge of an interstate train ceases when the crew is relieved of duty under the Sixteen-hour law and has left the premises of the company, and if the crew deadheads to another point the deadhead trip is a separate employment, the character of which depends upon the proof.

5. SAME—*train crew deadheading to division point is in company's employ.* A train crew deadheading to a division point after being relieved of duty under the Hours of Service act is in the employ of the railroad company within the meaning of the Compensation act though not "on duty" under the Hours of Service act; and this rule covers the time when the crew are attempting to board the train to begin the deadhead trip.

6. SAME—*loss of substantial portion of leg constitutes loss of leg.* The loss of any substantial portion of a leg constitutes the loss of the leg within the meaning of the Compensation act, and the necessary amputation of the leg ten inches above the ankle joint will entitle the employee to compensation for loss of the leg.

WRIT OF ERROR to the Circuit Court of Marion county; the Hon. THOMAS E. FORD, Judge, presiding.

FRANK F. NOLEMAN, JUNE C. SMITH, and ANDREW J. DALLSTREAM, (J. A. CONNELL, of counsel,) for plaintiff in error.

WHAM & WHAM, for defendant in error.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This writ of error is prosecuted by leave of court to review a judgment of the circuit court of Marion county confirming an award of the Industrial Commission awarding to Edward C. Koch, defendant in error, compensation for the loss of his left leg.

Defendant in error was employed as a locomotive engineer by plaintiff in error. On June 4, 1918, he was directed to take a train of empty coal cars from Centralia to West Frankfort, both stations in Illinois. He reached West Frankfort during the night and was directed by the train dispatcher to take a train of loaded coal cars from West Frankfort to Centralia. Some of the cars in this train were billed to points outside this State. About 2:40 o'clock in the morning of June 5, 1918, defendant in error pulled this train into Sesser, a station thirty-two miles from Centralia. For some reason unaccounted for in the evidence this train stood on the side-track at Sesser for more than five hours. About 7:45 A. M. the train crew had been on duty almost sixteen hours, and because of the provisions of the Hours of Service act, (U. S. Comp. Stat. 1916, sec. 8678,) defendant in error and his co-employees were relieved from duty. A section crew took charge of the train and defendant in error left the premises of plaintiff in error. The conductor of the relieved train crew communicated with the train dispatcher and obtained permis-

sion for the train crew to deadhead into Centralia. While defendant in error and other members of the crew were eating breakfast in a restaurant near but off the right of way they learned that an extra freight train was coming from the south, and they left the restaurant and went to the right of way for the purpose of riding this train to Centralia. Some member of the crew signaled the engineer of the approaching train to slow down, and the speed of the train was reduced to about ten miles an hour. All of the crew were successful in boarding the train except defendant in error. In making the attempt he slipped and fell beneath the wheels, and his left leg was so injured that it was necessary to amputate it at a point about ten inches above the ankle joint.

The first question presented for our consideration is whether defendant in error was employed in interstate commerce. While the general rules governing the determination of this question are well settled, the application of the rules to the facts here presented has not before been considered by this court, and so far as we know has not been considered by any other court of last resort. The record is silent as to whether the train of empties pulled by defendant in error from Centralia to West Frankfort contained interstate cars, and it must therefore be assumed, for the purposes of this case, that it was an intrastate train. (*Chicago, Rock Island and Pacific Railway Co.* v. *Industrial Board,* 273 Ill. 528.) The train pulled by defendant in error from West Frankfort to Sesser was an interstate train, and the question presented is whether the employment of defendant in error at the time of his injury was a continuation of the employment in connection with this interstate train. We have often said that the true test is that at the time of the injury the employee was engaged in interstate transportation or in work so closely related to it as to be practically a part of it. Plaintiff in error was engaged in both intrastate and interstate commerce, and to relieve

296–15

himself of his obligation to provide and pay compensation under the Workmen's Compensation act it was incumbent upon him to show the fact that the work being done at the time of the injury was interstate commerce. *Illinois Central Railroad Co.* v. *Industrial Board,* 284 Ill. 267; *Chicago and Alton Railroad Co.* v. *Industrial Com.* 290 id. 599; *Grand Trunk Western Railway Co.* v. *Industrial Com.* 291 id. 167.

As we have said, defendant in error was relieved from duty at 7:45 A. M. His time stopped at the moment he was relieved and he was then out of the service of plaintiff in error. After he left the premises of his employer and was no longer fulfilling any duty of his employment he was not employed by plaintiff in error within the meaning of the Workmen's Compensation act. (*Fairbank Co.* v. *Industrial Com.* 285 Ill. 11; *Schweiss* v. *Industrial Com.* 292 id. 90.) Under the Hours of Service act defendant in error was required to be off duty at least eight hours. During this rest period his time was his own and he could do with it as he pleased. He could have remained in Sesser during the full period or he could have gone to any other place to which he chose to go. It was the custom of employees released under the Hours of Service act to obtain permission from the train dispatcher to ride into a terminal on the first train going in that direction. If the relieved employees chose to go into the terminal their contract of employment with plaintiff in error provided that they would receive full compensation during the time they were traveling from the point where they were relieved to the terminal. In the instant case the train dispatcher advised the conductor of the relieved crew that he was sending another crew to Sesser to bring in the train and gave the relieved crew authority to deadhead into Centralia. According to the testimony of defendant in error and of the conductor, they were going into Centralia to be ready, after their rest period had terminated, to receive further

orders from their employer. While the members of this relieved train crew were not "on duty," within the meaning of the Hours of Service act, when they were deadheading into Centralia, (*Osborne's Admr.* v. *Cincinnati, N. O. and T. P. Railway Co.* 158 Ky. 176, 164 S. W. 818,) they were in the employ of plaintiff in error within the meaning of the Workmen's Compensation act. (*Southwestern Railway Co.* v. *Brothers,* (Tex.) 165 S. W. 488; *Lamphere* v. *Oregon Railroad and Navigation Co.* 196 Fed. 336.) In the *Brothers case* it was held that where an extra brakeman was employed on an interstate train from one division point to another, and was, under orders to immediately return to his home, deadheading back, the return trip was a part of the round trip service, and his employment, while deadheading back, was therefore in interstate commerce; and in the *Lamphere case* it was held that an engineer ordered to report at a distant point to relieve a crew on an interstate train was engaged in interstate commerce while on his way to take charge of the engine to which he had been assigned. The exact question presented in those cases is not before us and we do not express any views on it. We have held that where an employee is injured on the premises of the employer in going to or returning from his employment he is then in the employment of his master because the thing he is doing is necessarily incident to his employment, and the character of his employment at that particular time is determined by the character of the employment he is assigned to do when he goes on active duty or the character of the employment which he has just left. *Wabash Railway Co.* v. *Industrial Com.* 294 Ill. 119.

The record shows that the time of the crew of which defendant in error was a member was kept by plaintiff in error on three separate trip-sheets. The first covered the time of taking the intrastate train from Centralia to West Frankfort; the second covered the time of taking the in-

terstate train from West Frankfort to Sesser; and the third covered the time the crew was deadheading in from Sesser to Centralia. Between the time covered by the second trip-sheet and the time covered by the third trip-sheet was a period when defendant in error was not in the employ of plaintiff in error and when he was off the premises of plaintiff in error. We consider the trip from Sesser to Centralia a separate employment, in no way connected with the trip from West Frankfort to Sesser. It was not necessary, in the performance of the duties connected with this interstate train, that the train crew deadhead into Centralia. After they were relieved from duty at 7:45 A. M. they had no further connection with this train, and if the train dispatcher of plaintiff in error had not directed them to return to Centralia they would not have been in the employ of plaintiff in error for at least eight hours. Plaintiff in error gave defendant in error permission to deadhead into Centralia and paid him for the time necessary for him to perform this service. It must be presumed that this employment was for the benefit of plaintiff in error, and that he wanted defendant in error at the terminal so that he might be available for other service. Whether that service was to be intrastate or interstate employment is not shown by anything that appears in this record, and, as we have said, it will be assumed for the purposes of this case, in the absence of a showing to the contrary, that the service was an employment within the terms of the Workmen's Compensation act. The Industrial Commission has determined that this employment was in intrastate commerce and that the injury arose out of and in the course of the employment, and in the proper exercise of the jurisdiction of this court in cases of this character the decision ought not to be disturbed.

Plaintiff in error contends, further, that the award of the Industrial Commission should have been for the loss of a foot and not for the loss of a leg. Under item 15 of

paragraph (*e*) of section 8 of the Workmen's Compensation act (Laws of 1917, p. 496,) it is provided that compensation shall be paid for the loss of a leg or the permanent or complete loss of its use. No distinction is made under the act between the loss of the whole leg and the loss of a part of the leg. The loss of any substantial portion of the leg constitutes the loss of the leg within the meaning of the act, and the commission correctly decided that the amputation of the leg ten inches above the ankle joint entitled defendant in error to compensation for the loss of the leg.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*