BLACK DIAMOND COLLIERIES *v.* CONDA CARDEN.*

(*Knoxville.*   September Term, 1924.)

1. **MASTER AND SERVANT.**  Finding injury constituted loss of leg
   within Compensation Act held not controlling on appeal.

   Where trial court's conclusion that employee lost a leg was not on
   disputed facts, and particulars of injury are described with such
   detail that he had no advantage over supreme court in determining
   nature of injury, latter was not bound thereby, where evidence
   showing loss of foot only.   (*Post,* p. 343.)

   Acts cited and construed:   Acts 1919, ch. 123.

   Case cited and disapproved:   Ezell v. Tipton, 264 S. W., 355.

2. **MASTER AND SERVANT.**  Amputation of leg six inches above
   ankle joint held loss of foot only.

   Amputation of leg six inches above ankle joint *held* to result in loss
   of foot only, for which Workmen's Compensation Act, section 28,
   subsec. (c), provides for fifty per cent. of average weekly wages
   during one hundred twenty-five weeks.   (*Post, pp.* 343, 344.)

   Case cited and approved:   Payne v. Industrial Commission, 296 Ill.,
   223.

   *Headnotes 1.   Workmen's Compensation Acts, section 144;   2.
Workmen's Compensation Acts, section 92.

FROM ANDERSON.

Appeal from the Circuit Court of Anderson County.—
HON. J. H. S. MORISON, Judge.

*As to what amounts to loss of leg within meaning of Workman's
Compensation Act, see note in 18 A. L. R., 1352.

FRANTZ, McCONNELL & SEYMOUR and J. H. WALLACE, for plaintiff.

J. H. UNDERWOOD, for Conda Carden.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a proceeding under the Workmen's Compensation Act, Chapter 123 of the Acts of 1919. The only question presented is whether the defendant in error is entitled to recover as for the loss of a leg or as for the loss of a foot. The trial judge held that he. was entitled to recover as for a leg, and the employer has appealed.

The statute—section 28, subsec. (c)—provides for recovery as follows:

"For the loss of a foot, fifty per centum of average weekly wages during one hundred and twenty-five (125) weeks.

"For the loss of a leg, fifty per centum of the average weekly wages during one hundred and seventy-five (175) weeks."

The case below was tried upon an agreed stipulation of facts in which the injuries of the employee were described as follows:

"All of the bones of the toes, instep, and ankle of the left foot of the plaintiff were crushed, but there was no injury above the ankle; that it was necessary to amputate the left foot of the plaintiff, but instead of amputating at the ankle the surgeon amputated at the junction of the lower and middle thirds, which point of amputation is six inches above the ankle joint and is eight

and one-fourth inches from the floor level or bottom of the foot of the plaintiff; that a flap of flesh or tissue one inch thick was left at the end of the bone and was placed over the end of the bone so as to furnish a cushion to protect the stump from injury and prevent the stump from becoming sore or infected from pressure that will occur in the use of same; that the length of the fibula, which is the large bone of the leg, from the upper end, that is, from the knee down to the point of amputation, is eleven inches with the additional inch of flesh or tissue which was provided for a flap, and so the length of the leg from the knee joint to the end of same. that is, the stump, is twelve inches; that before the injury the length of the left fibula was seventeen inches, and from the lower end of the fibula to the floor level or bottom of the foot was two and one-fourth inches; that from the lower end of the fibula, that is, the ankle joint to the point on the bone where the amputation was made, it is six inches; that it is the well-recognized practice and custom of physicians and surgeons where an injury to a foot makes it necessary to amputate the foot, the amputation is made at the junction at the middle and lower thirds of the leg, that is, at the point where amputation in this case was made, and it is not the custom or practice of physicians and surgeons to amputate at the ankle joint for the reason that a better result is obtained by amputating at the point where the amputation was made in this case, and the plaintiff will have better use of his leg, and an artificial limb can be attached and used in a better and more efficient way than if the amputation is made at the ankle joint.''

Black Diamond Collieries v. Carden.

The conclusion of the trial court was not upon disputed facts, and the particulars of the injury are described with so much detail that his observation of the injured employee could have given the trial court no advantage over this court in determining the nature of the injury. *Ezell* v. *Tipton,* 264 S. W., 355, is therefore not in point, and we do not feel bound by the result below, since in our opinion all the evidence tends to show that the employee can only be considered to have lost a foot.

The portion of his leg which was amputated above the foot was of no possible service to him, after the foot was gone. On the contrary, the stipulation shows that, with the foot absent, this portion of the leg amputated was a disadvantage.

It cannot be reasonably contended that a man whose leg has been amputated just above the ankle has lost that leg. He has left all of the leg that is of any use to him except the foot. His knee joint remains, and a sufficient stump below the knee to which may be attached an artificial foot. With an artificial foot, such a man acquires a use of the repaired leg that nearly approaches the use of a sound leg. While such a loss as the employee here sustained is serious indeed, it is not equivalent to the loss of his leg. For practical purposes it amounts only to the loss of his foot.

The statute makes a difference between the loss of a foot and the loss of a leg. It is our duty to respect this distinction, and bearing the distinction in mind we must conclude that the employee here cannot be said to have lost more than a foot.

We think *Payne* v. *Industrial Commission,* 296 Ill., 223, 129 N. E., 830, is not in point. The court in that case

shows that the Illinois statute makes no distinction between the loss of the whole leg and the loss of a part of the leg. The court therefore held that the foot being a substantial part of the leg, an employee losing his foot was entitled to recover as for a leg.

Modified as indicated, the judgment of the trial court will be affirmed. Costs divided.