LOUIS T. HOOPER TIRE CO. *et al. v.* MONROE MANEESE.

*(Nashville,* December Term, 1931.)

Opinion filed February 13, 1932.

AVERY HANDLEY, for plaintiff in error.

H. A. LUCK and B. L. ALDER, for defendant in error.

MR. JUSTICE COOK delivered the opinion of the Court.

The petitioner was awarded compensation of $12.80 a week for 175 weeks for the loss of his leg. Defendants

appealed, insisting that he was only entitled, under chapter 123, Acts of 1919, to compensation for loss of his foot.

One of the objects of the compensation law, as shown by the context, was to avoid controversy in the adjustment of compensation for injuries by the use of fixed schedules, as indicated by section 28-c. It is there provided that "In cases included in the following schedules, compensation shall be that named." Among others "For the loss of a foot, fifty per centum of average weekly wages during one hundred and twenty-five (125) weeks; for the loss of a leg, fifty per centum of the average weekly wages during one hundred and seventy-five (175) weeks."

Preceding the schedule, wherein compensation is fixed for the specific loss of parts or members of the body, is the declaration "For permanent partial disability compensation shall be based upon the extent of such disability."

It is the duty of the court to apply these schedules according to the intention expressed by the legislature.

The facts of this case vary slightly from those in *Black Diamond Collieries* v. *Carden,* 150 Tenn., 336. There the injury to the foot necessitated amputation six inches above the ankle and eight and one-fourth inches from the bottom of the foot, leaving eleven inches of the leg below the knee. In that case it was insisted that the employee was entitled to compensation for the loss of use of a leg, but the court held that he was only entitled to compensation for the loss of the foot.

Here there was a fracture at the middle of the lower third of the left leg and necessary amputation left ten

and one-fourth inches of the leg below the knee after removal of twelve inches, including the foot and ankle.

The defendants insist that the Carden case is controlling. Petitioner insists that it would be a grave injustice to award compensation for a foot instead of a leg when the foot was not seriously injured.

While the petitioner's foot was not injured, its removal was made necessary by the fracture above the foot. Something near half of the leg below the knee was amputated. If he had lost a leg or the use of it, compensation fixed by the schedule would be fifty per cent of the average weekly wages for 175 weeks.

If, as in the Carden case, compensation can not be awarded for a leg when injury to a foot requires amputation of a portion of the leg, compensation could not be awarded for a leg or for the use of a leg when an injury a short distance above the foot requires removal of about the same portion of the lower leg, as would be necessary in the amputation of a foot. The compensation would be controlled by the schedule fixing compensation for the loss of the foot or else it would be controlled by a provision of section 28-c which reads:

"In cases of permanent partial disability due to injury to a member resulting in less than total loss of use of such member not otherwise compensated in this schedule, compensation shall be paid at the prescribed rate during that part of the time specified in the schedule for the total loss or total loss of use of the respective member, which the extent of injury to the member bears to its total loss."

As said in *Black Diamond Collieries* v. *Carden*: "The portion of his leg which was amputated above the foot was of no possible service to him, after the foot was

gone. . . . It cannot be reasonably contended that a man whose leg has been amputated just above the ankle has lost that leg. He has left all of the leg that is of any use to him except the foot. His knee joint remains, and a sufficient stump below the knee to which may be attached an artificial foot. With an artificial foot, such a man acquires a use of the repaired leg that nearly approaches the use of a sound leg. While such a loss as the employee here sustained is serious indeed, it is not equivalent to the loss of his leg. For practical purposes it amounts only to the loss of his foot. The statutes makes a difference between the loss of a foot and the loss of a leg. It is our duty to respect this distinction, and bearing the distinction in mind we must conclude that the employee here cannot be said to have lost more than a foot.''

Under the facts of this case showing amputation at a point ten and one-fourth inches below the knee with the remainder of the leg below the knee and all of it from the knee to and including the hip and unattended by other bodily injury, it would be manifestly unjust to the employee to apply the apportionment provisions of the Act and make the compensation dependent upon the degree of the loss of the leg or upon the varying opinions of experts, or upon the quantity of the loss of the leg measured by inches. It would make the employee's compensation dependent upon the opinions, whimsical and otherwise, of experts and deprive him of the benefit of the certainty afforded by fixed schedules of the Compensation Act. To avoid such eventuality and to as nearly as possible definitely fix the compensation, it was provided in the Act that, ''Where an employee sustains concurrent injuries resulting in concurrent disabilities, he

shall receive compensation for the injury which produced the longest period of disability."

The longest period of disability prescribed by the Act is that allowed for the loss of the foot, and that schedule should be applied.

The judgment of the trial court will be modified so as to award $12.80 a week during 125 weeks, and as modified the judgment will be affirmed.