## CLARK et al. v. TEXAS EMPLOYERS INS. ASS'N.

No. 14944.

Court of Civil Appeals of Texas. Fort Worth.

May 14, 1948.

Rehearing Denied June 11, 1948.

Allen, Locke & Kouri and Z. D. Allen, all of Wichita Falls, for appellants.

Nelson, Montgomery & Robertson and Allan D. Montgomery, all of Wichita Falls, for appellee.

McDONALD, Chief Justice.

This is a workmen's compensation case. Plaintiff claims that she suffered from lead poisoning resulting from a small cut on one of her fingers. The verdict of the jury was favorable to plaintiff, but the trial court rendered judgment notwithstanding the verdict in favor of the defendant, the insurance carrier. The two principal questions presented on the appeal are (1) whether there is any evidence to show that plaintiff had lead poisoning, and (2) whether, if she did, it resulted from the injury to her finger.

Plaintiff suffered a serious illness, beginning a day or two after she cut her finger and still continuing at the time of trial several months later. Neither she nor her husband was permitted to say whether or not it was a case of lead poisoning. Dr. Caskey, the physician who attended her during all of her illness and who was still attending her at the time of trial, was called as a witness in behalf of plaintiff. He testified that when he first saw her he thought that she might be suffering from some kind of heavy metal poisoning, but that after he and another physician had performed an abdominal operation on her he concluded that she was not suffering from lead poisoning, but from other conditions which he described. Among other things, he said that a victim of lead poisoning would recover therefrom in four or five days, or in any event within two or three weeks, unless there was continued exposure to lead. There is no testimony from any witness contradicting the last mentioned declaration of plaintiff's own witness. Plaintiff worked only one day after she cut her finger.

Dr. Cook, a dentist, appearing as a witness for plaintiff, testified that he did some dental work for plaintiff in the later part of August, which was about four months after the date she cut her finger. He said that he observed on her teeth what he called a "lead line," which, he said, was a symptom of lead or metallic poisoning, later saying that it was a symptom of lead or bismuth poisoning, more likely lead. He was asked the question: "So you don't know whether she had lead poisoning or not?" His answer was, "No."

Dr. Pasternak, a pathologist, testified as a witness for defendant. We have carefully examined his testimony, and find nothing in it that supports plaintiff's case. He

said that abdominal pain might accompany lead poisoning, or a great many other ailments.

■ The most that can be said of the evidence, in favor of the verdict, is that it was sufficient to show that plaintiff had certain symptoms which were consistent with a diagnosis of lead poisoning as well as other ailments, plus the symptom described by the dentist, to-wit, the lead line on her teeth, which indicated that she had had lead or other metal poisoning at some prior time. The testimony of the dentist cannot be treated as an expert opinion from him that she was suffering from lead poisoning at the time he examined her, because, as said above, he stated in answer to a direct question that he did not know whether she had lead poisoning or not.

It is clear from the record that lead poisoning is not a subject within the sphere of knowledge of the average juror. Dr. Caskey, the witness in this case who was in the best position to express an informed opinion, and whose credibility was vouched for by plaintiff when she placed him on the stand, would not say that she had lead poisoning, but diagnosed her case as something else. This not the case we frequently encounter where the defendant's medical witnesses testify contrary to the claims of the plaintiff. Here there is a lack of evidence of probative value to show that plaintiff had lead poisoning, coupled with the apparent opinion of her own physician that she did not have it. Especially in view of what we say later in this opinion, we can find nothing to support the finding of the jury that she suffered from lead poisoning.

Plaintiff worked in a fruit jar factory. She cut her finger while handling fruit jar lids, and the theory of her suit is that the lids were made partly of lead, and that she received the lead poisoning through the cut on her finger. Early in the trial two types of lids were introduced in evidence, identified respectively as Exhibits "A" and "B". Exhibit A was a one piece lid made mostly of zinc. According to the undisputed evidence the percentage of zinc in the lid was 99.76, the percentage of lead was 0.07, and the percentage of the remaining elements was 0.17. Exhibit B was a two piece lid, in which there was no lead whatever, and which was described as being brass or gold colored. While plaintiff was on the stand she repeatedly testified that at the time she cut her finger her job was to assemble the two piece lids by putting together the two parts which comprised the lid, and that she had nothing to do with the one piece type of lid identified as Exhibit A. She said, however, that the two piece lids she was working with were silver colored. No lid of the type described by plaintiff was ever introduced in evidence, nor was there any evidence as to the type of metal in said lid. After the parties had rested the trial court court stated that he did not believe that plaintiff made out a case, for the reason, among others, that the evidence did not show that there was any lead in the lids plaintiff was working with, and that, consequently, there was nothing in the evidence to show that she could have received the lead poisoning in her work. Plaintiff was then recalled to the stand. She introduced two other types of jar lids in evidence. These two lids were identified as Exhibits "F" and "G". Plaintiff then testified that she cut her finger on a lid like Exhibit F, which was a one piece lid similar in design, and somewhat similar in color, to Exhibit A, the latter being the lid in which there was 0.07 per cent of lead, or seven parts of lead to ten thousand parts of the whole. There was no evidence as to the kinds of metal in either of the large lids, Exhibits F and G.

Assuming that the jury might properly have believed either of the contradictory stories told by the plaintiff as to the type of lids she was working with, in either event there is no evidence to show that there was any lead in the lids she was working with when she cut her finger.

If we could reasonably infer that she did cut her finger on a lid that had some lead in it, there is no testimony to show that she received enough lead in her body to poison her. Dr. Caskey said that he did not know how much lead it would take to cause lead poisoning. The opinion of Dr. Pasternak, the pathologist, was to the effect that the amount of lead contained in the Exhibit A

type lid would not produce lead poisoning if all the lead in one of them had found its way into the body.

 It is elemental that the plaintiff, to establish a claim for workmen's compensation, must show an incapacity to work resulting from an accidental injury arising out of her employment. Plaintiff has shown the incapacity to work, but only by conjecture and the sheerest speculation could it be found from the evidence before us that her incapacity was caused by lead poisoning resulting from the cut on her finger.

The judgment of the trial court is affirmed.