COKER *v.* ARMCO DRAINAGE & METAL PRODUCTS Co. *et al.*

*(Nashville,* December Term, 1950.)

Opinion filed January 13, 1951.

On Rehearing March 9, 1951.

H. R. RATCLIFF and PATRICK JOHNSON, both of Memphis, for appellant.

JOHN R. GILLILAND and CANALE, GLANKLER, LITTLE, BOONE & LOCH, all of Memphis, for appellees.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

This is a Workmen's Compensation case. The Trial Judge awarded compensation but Petitioner, the injured employee, insists that the basis upon which the award was calculated was incorrect and the amount of award insufficient.

There is no question but that there is material evidence to support the finding of the following compensable injury by the Trial Judge:

"While the petitioner was performing the duties of his employment, which included the unloading of box cars, a box car in which petitioner was working over-

turned causing sheet steel contained therein to slip and slide upon and against the person of the petitioner causing a crushing injury to the left foot which required amputation at the junction of the middle and lower third of the lower limb.''

The amputation was not a complete success in that Petitioner has not been able to use an artificial foot without pain and discomfort. However, the Defendant has agreed to pay the expense of an additional operation for the removal of a neuroma which Doctors Moore and A. H. Meyer consider will make it possible for Petitioner to use such foot.

In basing the award of the amount provided by the statute for the scheduled loss of a foot, and in refusing to make an award on proportionate loss of earning capacity, the Trial Judge found:

''It is the theory of the petitioner that he knows nothing but manual labor and that this is uncontradicted, and that as a result of the injury and subsequent amputation, he is unable to perform manual labor and is entitled to compensation for permanent total disability. It is further the theory of the petitioner that even if he has the operation which was tendered at the time of the trial to remove any neuroma that he might have, that he is entitled to temporary total disability until such time as he is able to return to some occupation and that he then would be entitled to compensation as provided for the loss of a leg in addition to the period covering temporary total disability.

''It appears to the Court that this case is identical in principle with that of *Phillips* v. *Diamond Coal Mining Co.*, 175 Tenn. 191, 133 S. W. (2d) 476. In that case the injured employee was an electrician and operator of a coal cutting machine. He received an injury which neces-

sitated the amputation of the right leg just below the hip. The case of *Russell* v. *Va.* [*Virginia*] *Bridge & Iron Co.,* 172 Tenn. 268, 111 S. W. (2d) 1027, was urged to support an award for permanent total disability, it being shown that by reason of his injury the employee was prevented from gainful occupation for which he was fitted. The contention was denied and the award limited to the statutory amount for the loss of a leg.

"A distinction between the Russell case and the Phillips case is thus made in the course of the opinion in the latter [175 Tenn.] at page 193: [133 S. W. (2d) at page 477]:

" 'Where the injury is confined to the loss of a single member of the body, compensation is limited to the sum which the Statute specifically provides for such loss regardless of the earning capacity of the injured employee.'

"In this case the petitioner contends that the circumstances bring this case within that of *Russell* v. *Va.* [*Virginia*] *Bridge & Iron Co.,* supra, and the cases of *Central Surety & Ins. Corp* v. *Court,* 162 Tenn. 477, 36 S. W. (2d) 907, and *Kingsport Silk Mills* v. *Cox,* 161 Tenn. 470, 33 S. W. (2d) 90. In all of these cases, however, the injured members were not actually lost and the injuries were greater than the loss of such member would have been. The distinguishing feature between the case at bar and those mentioned immediately above is that in the present case the employee has actually lost a member, whereas in the case of *Russell* v. *Va.* [*Virginia*] *Bridge & Iron Co.,* supra, the injury was the crushing of the right ankle and foot, which remained. In the case of *Central Surety & Ins. Corp.* v. *Court,* supra, the injury was one to the hip which rendered the leg useless, the leg remaining as a hindrance and impaired the entire use of

the body. Likewise, in the case of *Kingsport Silk Mills* v. *Cox,* supra, the injury was a fracture of the hip which left the leg useless and an impairment to the entire function of the body.

. . . . .

"In the case of *Plumlee v. Maryland Cas. Co.,* 184 Tenn. 497 [201 S. W. (2d) 664], the employee suffered leg burns totally and permanently disabling him from earning his living in the only occupation for which he was fitted but his leg was not in fact lost, and the Court held that he was entitled to compensation benefits for permanent total disability. The distinction is again recognized between the cases, such as the Russell case and the Phillips case.

. . . . .

"Having concluded, therefore, that petitioner is not entitled to recover for permanent total disability, what then is the extent of his disability for which he is entitled to recover? The injury sustained was confined to the foot. It was described by Dr. A. H. Meyer as 'a crushing injury to the left foot.' The amputation occurred at the junction between the middle and lower third of the lower limb. A subsequent operation was performed by doctors at the Kennedy Veterans Hospital and one-half inch of the large bone and one and three-fourths inches additional of the smaller bone was amputated, prior to fitting petitioner with a prosthesis.

"In the case of *Black Diamond Collieries* v. *Carden,* 150 Tenn. 336 [265 S. W. 541], the amputation was at the approximate place as in the instant case. CHIEF JUSTICE GREEN, for the Court, said:

" 'The case below was tried upon an agreed stipulation of facts in which the injuries of the employee were described as follows:

" ' "All of the bones of the toes, instep, and ankle of the left foot of the plaintiff were crushed, but there was no injury above the ankle; that it was necessary to amputate the left foot of the plaintiff, but instead of amputating at the ankle the surgeon amputated at the junction of the lower and middle thirds . . . that it is the well-recognized practice and custom of physicians and surgeons where an injury to a foot makes it necessary to amputate the foot, the amputation is made at the junction at the middle and lower thirds of the leg, that is, at the point where amputation in this case was made, and it is not the custom or practice of physicians and surgeons to amputate at the ankle joint for the reason that a better result is obtained by amputation at the point where the amputation was made in this case, and the plaintiff will have better use of his leg, and an artificial limb can be attached and used in a better and more efficient way than if the amputation is made at the ankle joint.

" 'The conclusion of the trial court was not upon disputed facts, and the particulars of the injury are described with so much detail that his observation of the injured employee could have given the trial court no advantage over this Court in determining the nature of the injury. *Ezell* v. *Tipton* [150 Tenn. 300], 264 S. W. 355, is therefore not in point, and we do not feel bound by the result below, since in our opinion all the evidence tends to show that the employee can only be considered to have lost a foot.

" 'The portion of his leg which was amputated above the foot was of no possible service to him, after the foot was gone. On the contrary, the stipulation shows that with the foot absent, this portion of the leg amputated was a disadvantage.

" 'It cannot be reasonably contended that a man whose leg has been amputated just above the ankle has lost that leg. He has left all of the leg that is of any use to him except the foot. His knee joint remains, and a sufficient stump below the knee to which may be attached an artificial foot. With an artificial foot, such a man acquires a use of the repaired leg that nearly approaches the use of a sound leg. While such a loss as the employee here sustained is serious indeed, it is not equivalent to the loss of his leg. For practical purposes it amounts only to the loss of his foot.

" 'The statute makes a difference between the loss of a foot and the loss of a leg. It is our duty to respect this distinction, and bearing the distinction in mind we must conclude that the employee here cannot be said to have lost more than a foot.'

"The case of *Hooper Tire Co.* v. *Maneese,* 164 Tenn. 51 [45 S. W. (2d) 1071], followed the reasoning in the case of *Black Diamond Collieries* v. *Carden,* supra, and limited recovery to that for the loss of a foot where the point of amputation was approximately the same, although there was some injury to the leg above the ankle.

"In *Ezell* v. *Tipton,* 150 Tenn. 300 [264 S. W. 355], recovery was limited to the loss of a hand where the amputation occurred two inches below the elbow although Justice Hale dissented in part.

"It was petitioner's further theory that he is entitled to recover for all time he is temporarily totally disabled and then for the loss of a leg in addition thereto. This is answered in *Phillips* v. *Diamond Coal Mining Co.,* supra. In that case the Court said [175 Tenn.] at page 193 [133 S. W. (2d) at page 477]:

" 'Where the injury is confined to the loss of a single member of the body compensation is limited to the sum which the statute specifically provides for such loss, regardless of the earning capacity of the injured employee.'

"It, therefore, follows that the petitioner's compensation is to be measured by Code Section 6878-(c) for the loss of a foot, or 125 weeks plus 8 weeks healing period. Defendant, Maryland Casualty Company, having already paid 131 weeks at $20.00 per week, the additional recovery to which the petitioner is entitled is $40.00.

"Costs to be adjudged against the defendants."

Since we agree with the conclusions reached and think that this fair and careful study by the Trial Judge should have some recognition, we adopt this part of his opinion as the opinion of this Court.

Affirmed.

All concur.

## On Petition to Rehear.

GAILOR, JUSTICE.

Petition to rehear has been filed for the purpose of having this Court re-tax costs in this case. As we find merit in the petition, it is granted.

The pertinent facts are these:—Original petition was filed under the Workmen's Compensation Act in the Shelby County Probate Court. Harold R. Ratcliff, as surety, signed the prosecution bond by which, as surety, he engaged to be liable for the successful prosecution of the action by his principal, and in case of failure, to pay all costs and damages which might be awarded against his principal. Code, Section 9075. Whether these were the actual words of the bond, they would be read into it under Code, Section 9090.

In the Probate Court, the principal on the bond, the Petitioner in the Workmen's Compensation action, was successful in securing an award of compensation, and in the final order in the Probate Court, the costs accrued there were adjudged against the Defendant.

However, although the Petitioner was successful to an extent in the Probate Court, considering that the award of compensation there ordered by the Probate Judge, was insufficient, the original Petitioner in the Workmen's Compensation action, perfected an appeal to this Court and by order of the Probate Judge, this appeal was perfected on the pauper's oath. In our decision of the case on January 13, 1951, we affirmed the judgment of the Probate Judge, and in the judgment entered on that decision, costs were adjudged against the Petitioner in the Workmen's Compensation action, who had lost his appeal and against Harold R. Ratcliff as surety on his original prosecution bond.

Under reported cases we find that this adjudication of costs was erroneous.

█ █ The surety's liability on the prosecution bond is limited to costs adjudged against his principal by the Court in which the suit was instituted, *Deaton* v. *Mulvaney,* 69 Tenn. 73, and when the Probate Judge adjudged the costs against the opposite party, not his principal, the surety was discharged. *Woolfolk* v. *Woolfolk,* 167 Tenn. 362, 364, 69 S. W. (2d) 1089:

"The terms of this bond were therefore met when the court decreed in favor of the complainant and awarded no costs against complainant. This decree discharged the surety from the obligation of the bond."

"The statute was always construed to mean that the surety was not liable for costs beyond the judgment of the court in which the suit was instituted: *Hawkins* v.

*Thornton* [9 Tenn. 146], 1 Yerg. 146. And therefore if the suit was successfully prosecuted to judgment in that court the liability of the surety ceased: *Kennedy* v. *Jack* [9 Tenn. 82], 1 Yerg. 82. So strictly was the liability of the surety construed, that if the suit was eventually prosecuted with success, the surety was not liable for the costs of a nonsuit suffered by his principal in the progress of the cause: *Colville* v. *McKinney* [9 Tenn. 448], 1 Yerg. 448." *Dawson and Campbell* v. *Holt*, 80 Tenn. 27, 28.

Accordingly, the petition to rehear is granted and our former judgment will be amended to re-tax the costs as under the pauper's oath by which the Petitioner, David F. Coker, prosecuted his appeal.

All concur.