Roy Whitaker

*v.*

Morton Frozen Foods, Inc., and Hartford
Accident and Indemnity Company.

(*Nashville,* December Term, 1956)

Opinion filed March 8, 1957.

426

STEPHENSON, LACKEY & HOLMAN, Nashville, for appellant.

MACLIN P. DAVIS, JR., and WALLER, DAVIS & LANSDEN, Nashville, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This is an appeal from an award in a compensation case by the Circuit Court of Davidson County. The trial Judge found that the injured workman had suffered a fifty (50%) per cent total partial disability to his arm and entered judgment accordingly.

We will refer to the parties as they appeared in the trial court.

The only question to be decided is the extent of the petitioner's disability. The petitioner, Whitaker, insists that the judgment below should be affirmed, while the defendant, appellant here, argues to the contrary.

There seems to be no disagreement as to the injury.

The point of disagreement is whether the petitioner has sustained a 50 per cent partial disability to the arm or only a disability resulting from the loss of certain fingers.

The petitioner is a common laborer and was accidently injured while working for the defendant, Morton Frozen Foods, Inc. He was sweeping the floor with a broom when a blade of an exhaust fan, which was in operation, became disconnected in some way and struck the petitioner on the right hand with such force that it severed completely the third finger and the fourth, or little finger, was almost completely severed. He was taken to Dr. Hanley Sayers, the physician and surgeon for the defendant, who treated him for his injury. He smoothed up the wound where the third finger was severed. He decided to try and save the little finger by sewing it back to the hand; he set the bone and secured it by the use of wires and placing it in a splint. Later on he undertook an operation, with the petitioner's consent, the object being to afford a better use of the hand. He made an incision in the forearm which extended from the palm of petitioner's hand to a point in his arm about half way up the forearm and removed a tendon from the arm and grafted it to the fourth finger of the right hand. This incision was made in an "S" shape in order to minimize the tightening of the skin of the arm. An incision was also made on the fourth finger to a point in the palm of the hand. The tendon that was removed from the forearm, called the palmaris longus, caused a limitation in the "cupping" of the palm of the hand and wrist. In the surgery thus performed to remove the tendon there was the necessary severing of minor nerves and blood vessels.

The petitioner went into great detail in describing his duties. In testifying about the result of his injury the petitioner exhibited his hand and arm to the trial judge for inspection. He testified that as a result of the operation he could not pick up anything heavy, "I ain't got no grip in it." The first and second fingers are stiff, "a little stiff", to quote the witness. He is not able to use a hammer; not able to make a fist with his right hand.

Regarding the effect of the operation on his forearm he referred to the scar and testified that "during wet, damp weather, it hurts awful bad, all the time." I can't pick up near as much with it, not near as much as I could." He testified he was not able to do the same work as he did before the accident.

His employer gave him lighter work after the accident. Later on he was given a job by another employer; it consisted of "tightening up bolts". "That's the most I can do—just anything, that can be done with one hand, that is what I have to do. * * * Where I got to grip something and where I got to lift something, I can't do it."

The plaintiff's witness, Dr. O. L. Hamerick, testified that the disability to the arm was 75 per cent and that he could not do any work that required heavy lifting or gripping with his injured hand.

Dr. George Carpenter testified that petitioner suffered a 100 per cent loss of use of his third finger, 75 per cent loss of his fourth finger and 25 per cent disability to his hand. But he did not think there was any loss or partial disability to the arm.

At the conclusion of all the evidence the trial judge found that he suffered a 50 per cent partial permanent disability to the arm.

The assignments of error complain (1) that the findings and judgment were contrary to law; (2) no material evidence to support the findings and judgment; (3) same as in assignment (2); and (4) the material evidence showed only a total loss of his third finger and partial loss of the use of his little finger. It thus appears that all the assignments are based upon factual issues.

The counsel for appellant has relied upon several of our cases dealing with the question now before us, insisting that if we follow these decisions the case at bar would have to be reversed. In *Black Diamond Collieries v. Carden,* 150 Tenn. 336, 265 S,W. 541, 542, the workman's foot was amputated six inches above the ankle. It was held: "For practical purposes it amounts only to the loss of his foot." To the same effect is *Coker v. Armco Drainage & Metal Products Co.,* 192 Tenn. 10, 236 S.W.2d 980, and *Ezell v. Tipton,* 150 Tenn. 300, 264 S.W. 355, where the hand was amputated below the elbow and the loss was confined to that member.

■ ■ It is argued by way of analogy that these and other similar holdings are conclusive of the present controversy. But we cannot reach the merits of this case by comparing the results of petitioner's injuries with similar injuries in other cases decided by this Court in former opinions. Moreover the counsel ignores completely the testimony of the petitioner and Dr. Hamerick, and that their testimony must be viewed in the light most favorable to the injured workman. *Thornton v. RCA Service Co.,* 188 Tenn. 644, 211 S.W.2d 954; *Matthews v. Hardaway Contracting Co.,* 179 Tenn. 98, 163 S.W.2d 59. Furthermore if there is any material evidence to support the judgment below it must be affirmed.

It is settled law in this State that an employee may recover workmen's compensation for a new injury, or aggravation of his injury resulting from medical or surgical treatment. *Revell v. McCaughan,* 162 Tenn. 532, 39 S.W.2d 269.

Contention is made that there was no loss of any member except the third finger and petitioner would have sustained a loss of only two fingers had the fourth, or little finger, been amputated. We will not argue that question with counsel.

The trial judge viewed the injury after the operation, and the effect of it on the hand and arm. We find material evidence to support the findings and judgment of the trial court and the same is affirmed.