## 18550

John DUNMORE, Respondent, v. BROOKS VENEER COMPANY and Employers Mutual of Wausau, Appellants

(149 S. E. (2d) 766)

*Messrs. Smith & Moore* and *Arthur M. Flowers, Jr.,* of Georgetown, *for Appellants,*

*William E. Jenkinson, Esq.,* of Kingstree, *for Respondent,*

August 16, 1966.

BRAILSFORD, Justice.

This workmen's compensation case stems from a compensable injury sustained by claimant on January 4, 1962. The casualty was a crushing "injury to his foot at about the ankle," according to the statement of the case. The limb was surgically amputated at a point "about six and one-half inches below the knee." The claimant retained full range of motion in his knee and hip joints. He was fitted with a prosthesis and trained in its use. He reached maxi-

mum recovery on January 24, 1964. The South Carolina Industrial Commission found that claimant suffered a specific loss of one hundred per cent of his left leg, and awarded compensation accordingly. The commission also awarded claimant $2,500.00 for serious bodily disfigurement. On appeal by the employer to the circuit court, the award of the commission, except in a respect not now involved, was affirmed. The appeal to this court from the order of the circuit court raises two questions.

1—Whether claimant's injury resulted in the loss of a leg within the meaning of Section 72-153, Code of 1962?

2—Whether the disfigurement award is legally excessive?

*Question One:*

Our Workmen's Compensation Act undertakes to make certain the compensation to be paid to a workman who sustains any one of a number of scheduled injuries, including the loss of a hand, arm, foot, leg, or any digit of a hand or foot. In such cases, compensation depends upon the character of the injury rather than upon loss of earnings. Where not otherwise specified, the act requires proration in case of partial loss of a member by reducing proportionately the number of weekly payments allowed for total loss. *G. E. Moore Co. v. Walker,* 232 S. C. 320, 102 S. E. (2d) 106. These provisions of the act are codified in the 1962 Code as Section 72-153, from which we quote in pertinent part.

"(14) For the loss of a foot, sixty per cent of the average weekly wages during one hundred and twenty-five weeks;

"(15) For the loss of a leg, sixty per cent of the average weekly wages during one hundred and seventy-five weeks;

* * *

"(18) * * * The compensation for partial loss of * * * a member * * * shall be such proportion of the payments above provided for total loss as such partial loss bears to total loss."

By the explicit language of this statute, one who ██ sustains a partial loss of a leg is entitled to proportionate compensation only, that is to say, to "such proportion of the payments above provided for total loss as such partial loss bears to total loss." Therefore, the award in this case may be sustained only if an amputation approximately midway the lower leg, leaving a six and one-half inch stump below the knee, to which a prosthesis may be fitted, with no damage to the knee, thigh or hip joint, results in a total loss of the leg.* Merely to state this proposition is to refute it. The award to claimant of compensation for total loss of his leg is opposed to the unambiguous terms of the statute upon any possible interpretation of the facts, and should have been reversed by the circuit court.

The respondent cites the following decisions from four jurisdictions as supporting the proposition that an amputation between the ankle and knee entitles claimant to compensation for the loss of a leg under applicable workmen's compensation acts. *Reno v. Holmes*, 238 Mich. 572, 214 N. W. 174; *Pugh v. State Compensation Commissioner*, 113 W. Va. 84, 166 S. E. 817; *Payne v. Industrial Comm.*, 296 Ill. 223, 129 N. E. 830; *Holt v. West Kentucky Coal Co., Ky.*, 350 S. W. (2d) 155. We find these cases to be readily distinguishable and not persuasive on the application of our statute to the facts presented by this record.

The only substantial question on this aspect of the case is whether the award should have been made under sub-section (14) for loss of a foot, or under sub-section (18) for partial loss of a leg. This question arises under the medical testimony now adverted to, which was not a factor in any of the decisions relied upon by respondent.

---

* We unhesitantly conclude that the word leg in our Workmen's Compensation Act refers to a lower limb of the body including the thigh, even though in the nomenclature of anatomy it bears the restricted meaning of lower leg as distinguished from thigh. Otherwise, a mid-thigh amputation would not be compensable as a specific loss.

A crushing injury to claimant's foot at or about the ankle necessitated its amputation. We learn from the unanimous testimony of three medical experts that this was performed about midway the lower leg by choice, to promote the patient's rehabilitation through more efficient and satisfactory use of a prosthesis. Such an amputation is referred to medically as having been performed at the "site of election." In such cases, the exact point of severance is selected by the surgeon according to individual characteristics rather than by measurement. However, the choice, when available, is ordinarily exercised so as to leave a stump of from five to seven inches. This is the optimum length for a lower leg stump. It provides sufficient leverage, without excess pressure, in walking. Such a stump has a better blood supply, heals more quickly, develops a more adequate muscular pad and is not as likely to ulcerate as if the amputation had been at or closer to the ankle. Ankle site amputation stumps, as one witness expressed it, "give notoriously poor service." Another witness summed up by stating that there are no advantages in having a below the knee stump "longer than six to seven inches, and there are a number of disadvantages."

For the total loss of a leg, the statute specifies that an employee shall receive sixty per cent of his average weekly wages during one hundred and seventy-five weeks. For the loss of a foot only, he shall receive such compensation during one hundred and twenty-five weeks, or approximately seventy-one per cent of the specified compensation for the loss of the entire leg. Here, claimant has lost his foot, and is entitled to the specified compensation. A portion of his leg has been removed, but this was not a casualty in addition to the amputation of the foot. Absent the foot, this segment of leg was worse than useless, and the site of the amputation was selected to assist claimant in accommodating to the loss of the foot. This section of leg presented an obstacle to his rehabilitation, and its removal was not a loss in addition to the loss of the foot.

Five decisions in which this question has been raised have come to our attention. The result in each tends to support the conclusion which we have reached. *Black Diamond Collieries v. Carden,* 150 Tenn. 336, 265 S. W. 541; *Hooper Tire Co. v. Maneese,* 164 Tenn. 51, 45 S. W. (2d) 1071; *Coker v. Armco Drainage & Metal Products Co.,* 192 Tenn. 10, 236 S. W. (2d) 980; *Marshall v. Octavia J. Coal Mining Co.,* 252 Ky. 460, 67 S. W. (2d) 697; *Schell v. Central Engineering Co.,* 232 Iowa 421, 4 N. W. (2d) 399, 143 A. L. R. 576.

We disagree with respondent's view that the authority of *Marshall, supra,* Ky. 67 S. W. (2d) 697, has been undermined by the recent Kentucky decision in *Holt v. West Kentucky Coal Co., supra,* 350 S. W. (2d) 155. While it was held in *Holt* that the amputation of any substantial part of a leg is equivalent to the loss of the leg, and two prior Kentucky decisions reaching inconsistent results were overruled, neither *Holt,* nor the prior decisions which were carefully distinguished in *Marshall,* involved "site of election" amputations supported by medical testimony, on which the decisions in *Marshall* rested. It is more logical to conclude that the court in *Holt* recognized this distinction than to assume that its failure to overrule *Marshall* was inadvertent.

In our own case of *Jewell v. R. B. Pond Co.,* 198 S. C. 86, 15 S. E. (2d) 684, an amputation about six inches below the knee resulted in an award of compensation for the loss of a *foot* and for disfigurement. On appeal from the award for disfigurement only, this court referred to the loss involved as the amputation of a foot.

The conclusion which we reach sustains the legislative policy of special compensation for scheduled losses. Labeling claimant's loss as that of a foot will result in no prejudice to him. On this record, application of the partial loss formula could not soundly result in more compensation than that specified for loss of a foot. In fact, the only evidence on the point, a publication by a committee of the

American Medical Association entitled, "A Guide to the Evaluation of Permanent Impairment of the Extremities and Back," apparently in general use, is that claimant has lost seventy per cent of the use of his leg. On this basis, the partial loss formula would be slightly less favorable to claimant than the specified compensation for loss of a foot.

The opinion of the hearing commissioner states that the "Commission has for many years awarded compensation for one hundred per cent (100%) loss of the leg where the amputation was above the ankle joint * * *." The claimant invokes the rule stated in *Etiwan Fertilizer Co. v. South Carolina Tax Commission,* 217 S. C. 354, 60 S. E. (2d) 682, 684, that a uniform construction of a statute by an administrative body over a long period of years, acquiesced in by the General Assembly, "is entitled to weight, and should not be overruled without cogent reason." This sound principle may not be invoked to perpetuate a palpably erroneous application of an unambiguous statute which, in this respect, requires no construction, and which the commission and the courts are obligated to enforce. 2 Am. Jur. (2d) Administrative Law, Section 248.

The first exception is sustained.

*As to the second question:*

In *Jewell v. R. B. Pond Co., supra,* 198 S. C. 86, 15 S. E. (2d) 684, it was held that the "amputation of a foot necessitating the wearing of an artificial limb, is *per se* a serious bodily disfigurement." Determination of "proper and equitable compensation therefor has been committed to the commission by the legislature. An award within the statutory limit will not be reversed on appeal in "the absence of a showing that (it) was influenced by caprice, passion, prejudice or fraud * * *." *Schwartz v. Mount Vernon-Woodberry Mills,* 206 S. C. 227, 33 S. E. (2d) 517. There is no such showing on this record and the second exception is overruled.

Reversed in part and remanded for further proceedings consistent with this opinion.

Moss, C. J., LEWIS and BUSSEY, JJ., and W. L. RHODES. JR., Acting J., concur.