**ALTUS HOUSE NURSING, and The State Insurance Fund, Petitioners,**

v.

**Maxine ROBERTS, and The Workers' Compensation Court, Respondents.**

**No. 56534.**

Court of Appeals of Oklahoma, Division No. 2.

May 11, 1982.

Released for Publication by Order of Court of Appeals June 11, 1982.

Sam Hill, Oklahoma City, for petitioners.

B. E. Harkey, Oklahoma City, for respondents.

BRIGHTMIRE, Judge.

The principal question raised in this worker's compensation case is whether the trial court impermissibly evaluated disability resulting from a hip joint injury as a percentage of the whole body rather than of the leg alone. We hold it did not and sustain the award.

### I

On August 13, 1979, while working as a cook for respondent, Altus House Nursing, the 63-year-old claimant, Maxine Roberts, turned her ankle and fell in such a manner that her left knee hit the concrete floor and she wound up on her back. Hospital personnel determined that she had fractured her left femur near the hip joint. Within 24 hours physicians surgically removed the femoral neck and head and replaced them with an artificial head called a metal prosthesis. She returned to work in March 1980, but had to quit after 12 days because she was having difficulties with the left hip and knee. She has not worked since.

The claim came before the court for permanent disposition November 21, 1980. The trial judge received medical reports from three physicians and the deposition of one—the one to whom he had sent the patient.

Respondents placed one report in evidence which estimated claimant's permanent partial disability "to be somewhere in the percent [*sic*] of 5 to 15%."

Claimant's expert concluded that Roberts' whole body was 60 percent impaired because of the left hip injury and, in addition, that the left knee was 40 percent impaired.

The court's physician set claimant's impairment resulting from the injury at 58 percent to the left leg and gave no estimate of impairment of the body as a whole.

The trial court found the employee's hip-related disability to be 50 percent to the whole body and 20 percent to the left leg secondary to the knee damage. The displeased employer appealed to the court en banc; it affirmed, and Altus House seeks a modification here.

### II

The employer frames its first contention this way: the court improperly considered the hip injury as resulting in disability to the body as a whole rather than merely rating it as a "scheduled member," namely, the leg.

In supporting argument, the employer recognizes that prior to the 1978 workers' compensation legislation the residuals consequent to a hip joint injury were considered by the court as an injury to the "body as a whole." *Farmers' Co-Op Ass'n v. Beagley*, 158 Okl. 53, 12 P.2d 544 (1932). It argues, however, that with the advent of the 1978 law such whole body evaluation became impermissible and that the court was restricted, by the statutes and implementing court rules in effect at the time of claimant's fall, to determining what impairment the injury may have wrought on the left leg as though it were a scheduled member.

The theory is that the statute, 85 O.S. 1978 Supp. § 3(11), directs the Workers' Compensation Court to adopt guidelines for evaluation of permanent impairment, which, when adopted, must be followed. The court complied with its duty and adopt-

ed the American Medical Association *Guides to the Evaluation of Permanent Impairment* as evaluation guidelines for impairment. And because the 1978 law—85 O.S. 1978 Supp. § 3(13)—equates disability with impairment, the theory goes, the court must use the *Guides* for rating disability also.

 This is an interesting but unpersuasive rationalization. It has at least one fatal fundamental weakness—the AMA *Guides* does not address the problem of how a hip joint injury should be evaluated. And since the relevant statutory law (85 O.S. 1978 Supp. § 22) remains the same as it always has been with regard to such an injury, that is, that a hip joint injury is not one to a scheduled member, *Farmers' Co-Op Ass'n*, of course, still affords viable and commendable precedentiality.

### III

 The employer's other complaint is that the trial court's order is not supported by competent medical evidence. The thesis is that the court's findings involve a deviation from the AMA *Guides* and this it may not do for lack of an essential prerequisite, namely, a valid medical reason emanating from the lips of a physician.

The short answer to this is that, as we have seen, the court's findings involve no deviation from the *Guides*. The earlier narrated medical evidence was not only competent, but quite sufficient to support the order.

Award sustained.

BOYDSTON, P. J., and BACON, J., concur.