2063

Louise Y. GILLIAM, Appellant v. WOODSIDE MILLS, Employer and Liberty Mutual Insurance Company, Carrier, Respondents.

(435 S.E. (2d) 872)

Court of Appeals

Hal J. Warlick and Bryan D. Ramey, both of Warlick Law Office, Easley, for appellant.

Richard B. Kale, Jr., Greenville, for respondents.

Heard May 18, 1993. Decided Aug. 9, 1993.

Reh. Den. Sept. 27, 1993.

LITTLEJOHN, Acting Judge:

The only issue presented by this appeal is whether Louise Y. Gilliam was limited to workers' compensation benefits under S.C. Code Ann. § 42-9-30(15) (1985) for an injury to her leg as a scheduled member, or whether her resulting hip replacement entitled her to compensation under S.C. Code Ann. § 42-9-10 (1985) for total disability. The full commission, affirmed by the circuit court, found that her injury was confined to her leg. Gilliam appeals. We reverse.

In October 1989 Gilliam was injured in an on-the-job accident. She fractured her right femoral neck and required a total hip replacement. Gilliam's employer, Woodside Mills, accepted liability for her injury and began paying temporary total disability compensation. After her hip surgery, Gilliam was under the care of Dr. Michael Goodwin. In March 1990, Dr. Goodwin saw Gilliam for the last time and reported that, although she had improved, she still suffered "patellofemoral injury to the right knee and total hip replacement, right hip." Dr. Goodwin opined that she had reached maximum medical improvement and assessed her permanent disability at 45% for her right hip and 10% for her right knee.

In March 1990, Woodside Mills filed an application to stop payment of compensation on the ground that Gilliam had reached maximum medical improvement. In June 1990, Gilliam was evaluated by Dr. William B. Evins, who stated

that he thought Gilliam had reached maximum medical improvement and added "I think an impairment rating of the right lower extremity in the neighborhood of 50-55%, as Dr. Goodwin has outlined, is certainly realistic."

In November 1990 a hearing was held before the single commissioner on Woodside Mills's stop payment application. The single commissioner found Gilliam had reached maximum medical improvement and awarded compensation for permanent and total disability under S.C.Code Ann. § 42-9-10 (1985).

Woodside Mills filed an application for review, claiming among other things that the single commissioner erred in finding that Gilliam was totally disabled because her injury was confined to a scheduled member of the body under S.C. Code Ann. § 42-9-30 (1985). The full commission found that Gilliam had suffered an 85% permanent partial disability "to her right lower extremity." Accordingly, the full commission affirmed the award as modified, awarding her benefits for the loss of a scheduled member.

Gilliam petitioned for judicial review, claiming the full commission erred in amending the single commissioner's award. Gilliam asserted that the applicable statute was § 42-9-30." The circuit court found that the record contained substantial evidence to support the full commission's findings of fact, particularly that her injury was confined to her right lower extremity. The court added:

> [W]hen an employee suffers an injury which is confined to the scheduled member, and there is no impairment to any other part of the body because of such injury, the employee is limited to the scheduled compensation under Section 42-9-30, S.C. Code Ann. (1976). This is true even though she may have a total or partial loss of wage earning capacity from an industrial standpoint. Since [Gilliam's] injury was limited to her lower right extremity, the question before the Commission was her loss of use of that extremity rather than loss of earning capacity.

Accordingly, the circuit court affirmed the full commission's order. Gilliam appeals, contending her injury was not confined to her leg but included her hip, which she asserts is not part of her leg for purposes of her workers' compensation claim. We agree.

On appeal from the Workers' Compensation Commission, the court may not substitute its judgment for that of the Commission as to the weight of the evidence on questions of fact, but may reverse where the decision is affected by an error of law. S.C. Code Ann. § 1-23-380(g)(4) (1986). South Carolina Code § 42-9-30 provides in pertinent part:

> In cases included in the following schedule, the disability in each case shall be deemed to continue for the period specified and the compensation so paid for such injury shall be as specified therein, to wit:
>
> * * * * * *
>
> (15) For the loss of a leg, sixty-six and two-thirds percent of the average weekly wages during one hundred ninety-five weeks;
>
> * * * * * *
>
> (20) For the total or partial loss of, or loss of use of, a member, organ or part of the body not covered herein and not covered under §§ 42-9-10 or 42-9-20, sixty-six and two thirds or the average weekly wages not to exceed five hundred weeks.

On appeal, Gilliam argues her injury to her hip is not an injury to her leg (a scheduled member) so that § 42-9-10 controls her compensation. We agree, and join those courts which have held that the hip socket is part of the pelvis and not part of the leg for workers' compensation purposes. *See e.g. Blackburn v. Allied Chemical Corp.*, 616 S.W. (2d) 600 (Tenn. 1981) (finding the hip socket itself is part of the pelvis); *Scamperino v. Federal Envelope Co.*, 205 Neb. 508, 288 N.W. (2d) 477 (1980) (stating that the hip is neither a part of the leg nor a scheduled member); *Milburn v. Concrete Fabricators, Inc.*, 18 Ark. App. 23, 709 S.W. (2d) 822 (1986) (stating that medically speaking the hip may be considered part of the leg, but from a legal view it is part of the body as a whole); *Lauhoff Grain Co. v. McIntosh*, 395 N.W. (2d) 834 (Iowa 1986) (holding that the hip is part of the body as opposed to part of the leg, and where the effects of the loss of a member extend to other parts of the body and interfere with their efficiency the scheduled allowance for the lost member is

not exclusive); *Altus House Nursing v. Roberts*, 646 P. (2d) 9 (Okla. Ct. App. 1982) (noting that the "American Medical Association Guides to the Evaluation of Permanent Impairment" does not address the problem of how to évaluate a hip joint injury, and finding a hip joint injury is not one to a scheduled member and is properly rated in terms of impairment of the body as a whole). *See also* 1C Larson, *The Law of Workmen's Compensation* § 58.21, 10-492.163 to 10-492.190 (1993) (describing "stiffening of the hip socket" as an extended effect beyond injury to the leg as a scheduled member).

Woodside Mills argues that our Supreme Court has defined the "leg" to include the upper portions of a claimant's lower extremity, including the hip joint, citing *Dunmore v. Brooks Veneer Co.*, 248 S.C. 326, 149 S.E. (2d) 766 (1966). We disagree. In *Dunmore*, the claimant's foot was crushed at about the ankle. His leg was amputated about six and one-half inches below the knee. The claimant retained full range of motion in his knee and hip joints. He received a prosthesis and reached maximum medical improvement. The commission found that the claimant suffered a specific loss of 100% of his left leg, and awarded compensation accordingly. the circuit court affirmed. The employer appealed, claiming the injury did not result in a loss of the claimant's leg within the meaning of the specific member statute.

The Supreme Court stated that the commission's award could be sustained only if the amputation about midway down the lower leg, leaving a six and one-half inch stump below the knee to which a prosthesis could be fitted, with no damage to the knee, thigh or hip joint, resulted in a total loss of the leg. The Court held it did not. In a footnote, the Court stated:

> We unhesitatingly conclude that the word leg in our Workmen's Compensation Act refers to a lower limb of the body including the thigh, even though in the nomenclature of anatomy it bears the restricted meaning of lower leg as distinguished from thigh. Otherwise, a midthigh amputation would not be compensable as a specific loss.

*Id.*, at 330, 149 S.E. (2d) at 767, footnote 1. The court went on to hold that the claimant was only entitled to compensation for the loss of his foot as a scheduled member, since the ampu-

tation so far up the leg was necessary to best accommodate the prosthesis. We disagree with Woodside Mill's assertion in its brief that the Court in *Dunmore* "included the 'hip' in its definition of the 'leg' while explaining why the employee had not sustained a total loss of use of his 'leg.' " Clearly, this was not the holding of *Dunmore;* in fact, that issue was not even before the Court.

Accordingly, we hold that the decision of the full commission as affirmed by the circuit court which found Gilliam's compensable injury confined to her leg was controlled by an error of law. The judgment is

Reversed.

BELL, J., and BURNETT, Acting J., concur.