## Mills v. Mills & Connelly, et al.

(Decided May 21, 1926.)

## Appeal from Grant Circuit Court.

1. Master and Servant.—"Foot," within Workmen's Compensation Act, is that part of leg at or below ankle joint.

2. Master and Servant—Loss of Leg, Within Workmen's Compensation Act, is Loss Depriving it of Function as Support for Body and Means of Locomotion (Ky. Stats., Sections 4880-4987).—Within meaning of Workmen's Compensation Act, "loss of leg" is loss of so much of that member as deprives it of its function as a support for the body and as a means of locomotion.

3. Master and Servant—Amputation 7½ Inches Above Ankle Joint Held Not Compensable as "Loss of Leg" nor as "Loss of Foot," but as "Other Cases of Permanent Partial Disability" (Workmen's Compensation Act [Ky. Stats., Section 4899]).—Under Workmen's Compensation Act, compensation for amputation 7½ to 8 inches above ankle joint should be for less than for loss of leg and greater than for loss of foot according to the percentage of permanent disability, under provisions of Ky. Stats., section 4899, for "all other cases of permanent partial disability."

4. Master and Servant—Employee Receiving Compensation According to Percentage of Permanent Partial Disability Under Provission for "All Other Cases" May Also Receive Compensation for Temporary Total Disability (Workmen's Compensation Act [Ky. Stats., Sections 4897-4899]).—Employee, who, because his injury is embraced in class of "all other cases of permanent partial disability" not specifically named in Workmen's Compensation Act (Ky. Stats., section 4899), receives compensation according to percentage of permanent partial disability, may also receive compensation for temporary total disability, as provision that compensation shall be in lieu of other compensation applies only to injuries specifically named, in view of sections 4897, 4898.

S. D. ROUSE and G. W. HUGHES for appellant.

ORIE S. WARE for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Reversing.

Appellant, while operating a concrete mixer as an employee of appellee, Mills & Connelly, on the 8th of November, 1923, was injured. The firm was operating under the Workmen's Compensation Act, and appellant had accepted the provisions of that act. The appellee, Continental Casualty Company, was the insurer of the employees of Mills & Connelly, and as such was made a party to the proceedings before the compensation board.

The hearing before the board was had on an agreed state of facts which show in substance that appellant was employed by Mills & Connelly at an average weekly wage of $36.00 straight time, and that while so employed he sus-tained the following injuries:

    (1)  "Foot cut off by cable of concrete mixer necessitating immediate amputation of right leg nine inches below knee, leg measure 16½ to 17 inches from knee to ankle.

    (2)  "First and second fingers of left hand torn off between knuckle and first joint.

    (3)  "Fracture of middle third of radius of left arm."

The agreed statement also shows appellant was con-fined in the hospital for a period of 30 days, when he was released therefrom, but was under constant care of doc-tors until the 23rd of March, 1924; that on July 4, 1924, he was able to put on an artificial leg for the first time, and that during the first 60 days thereafter he was able to wear the artificial member only occasionally, due to the tender and unhealed condition of the stump, since which time he has been able to wear it approximately two-thirds of the time.

The compensation board awarded appellant for total disabiltiy from November 15, 1923, to September 8, 1924, $15.00 per week; and in addition compensation at $12.00 per week for 145 weeks for the amputation and loss of his right leg; and further $12.00 per week for 45 weeks for the loss of an index finger of his left hand, and $12.00 per week for 30 weeks for the loss of a second finger of his left hand, and not exceeding $100.00 expended for med-ical services.

The employers and the insurer filed their petition in the circuit court for a review of this award, calling in question the same only in so far as it allowed compensa-tion for a period of total disability, and in so far as it allowed compensation for the loss of a leg, and that court in its judgment modified the award of the board and allowed appellant compensation at the rate of $12.00 per week for 125 weeks for the loss of his right foot, and adjudged that the award of the board of $15.00 per week from November 15, 1923, to September 8, 1924, for tem-porary total disability be set aside, and from that judg-ment the claimant appeals.

Clearly there followed the injury a period of total temporary disability, and obviously there followed that period a period of permanent partial disability; and the two questions confronting us are: (1) whether there was the loss of a leg as found by the board, or only the loss of a foot, adjudged by the circuit court, and if neither, whether under the concluding provision of section 4899 compensation should be allowed according to the percentage of disability, there being no specific provision in the schedule of that section covering such a loss; and (2) whether any allowance for temporary total disability should be made.

Section 4899 deals specifically with partial permanent disabilities and the compensation therefor, and "other similar disabilities." It has in it an extended schedule fixing the length of time and the per cent. of the average weekly wages of the applicant to be awarded for the loss of thumbs, fingers and hands and parts thereof, and certain injuries thereto, for the loss of toes or parts thereof, and further provides:

"for the loss of a foot 65 per cent of the average weekly wages during 125 weeks; . . . for the loss of a leg 65 per cent of the average weekly wages during 200 weeks."

But the statute never designates or sets forth what shall be deemed and treated as the loss of a foot, or what shall be deemed and treated as the loss of a leg.

The concluding clause of that section, however, after this somewhat lengthy schedule, provides:

"In all other cases of permanent partial disability, including any disfigurement which will impair the future usefulness or occupational opportunities of the injured employee, compensation shall be determined according to the percentage of disability, taking into account, among other things, any previous disability, the nature of the physical injury or disfigurement, the occupation of the injured employee and age at the time of injury.; the compensation paid therefor shall be sixty-five per cent (65%) of the average weekly earnings of the employee, but not less than five dollars ($5.00) nor more than twelve dollars ($12.00), multiplied by the percentage of disability caused by the injury, for such period as the board may determine, not exceeding 335 weeks

nor a maximum sum of four thousand dollars ($4,000.00). Whenever the weekly payments under this paragraph would be less than three dollars ($3.00) per week, the period may be shortened and the payments correspondingly increased to that amount. Where compensation, except as provided in 4883 and 4885 of this act, is paid under any other provision of this act, the period during which such other compensation is paid and the amount thereof shall be · deducted respectively from the maximum period and maximum amount which may be paid under this paragraph.''

The leg in its broadest sense is that member of the human body upon which rests the main part of the body, and is primarily used as a support for that main portion and as a means of locomotion. It consists of three joints, that from the hip joint to the knee, from the knee joint to the ankle joint, and that portion known as the foot below the ankle joint in which, however, there are a number of lesser joints. The foot being a part of the support of the human body and being used in connection with the rest of the leg as a means of locomotion, is essentially a part of the leg in the broader sense. But we find that our compensation act for the purpose of fixing compensation for industrial accidents has separated the foot and the leg, and has specifically fixed the per cent of the average weekly wage and the length of time the applicant shall be allowed for the loss of either a foot or a leg.

Obviously, therefore, the statute had in contemplation when it provided for the loss of a foot that part of the leg at or below the ankle joint, and when it provided compensation for the loss of a leg it appears to have had in contemplation the loss of so much of that member as deprived it of its function as a support for the body and as a means of locomotion.

Keeping in mind that the foot is primarily a part of the leg which is designed to be a support for the human body as well as a means of locomotion, but that the statute for its purposes has separated the foot from the leg, it cannot be said with any degre of sound reason that the amputation at a point $7\frac{1}{2}$ to 8 inches above the ankle joint is not more than the loss of a foot. Certainly such a loss brings about a greater disability than the loss of a foot at or about the ankle.

On the other hand such an amputation which leaves unimpaired and free for use both the hip joint and the knee joint cannot reasonably be said to be the loss of a leg. Such a loss does not create as great a disability as would an amputation impairing seriously or destroying the use of the knee joint as a means of locomotion. Our conclusion is that the injury in this case is more than the loss of a foot and less than the loss of a leg, and seems to be necessarily embraced in that class of "all other cases of permanent partial disability" provided for in the concluding clause of section 4899.

It results on this branch of the case that neither the award of the board for the loss of a leg nor the judgment of the circuit court for the loss of a foot only, can be sustained; but the circuit court should have remanded the case to the board with directions to fix the compensation according to the provisions of the concluding clause of that section, but to so fix it so that the compensation for such injury in the aggregate would be less than for the loss of a leg, and greater than that for the loss of a foot, according to the percentage of disability and the other considerations mentioned in that clause. Nelson v. Kentucky Stone & Sand Company, 182 Ky. 317.

The circuit court likewise erred in making no allowance whatsoever for the temporary period of total disability as fixed in the award of the board. That ruling appears to have been based upon the language in the opening clause of section 4899:

"for injuries enumerated in the following schedule the employee shall receive in lieu of all other compensation,"

the specified per cent of his weekly wage for the designated physical injury. But the language there used has reference only to the specific injuries enumerated in that schedule, and does not embrace and was not intended to embrace the other cases of permanent partial disability not specifically mentioned in that schedule but provided for in the concluding clause. That "all other cases of permanent partial disability" provided for in the concluding clause were not intended to be embraced within the specific schedule may be easily ascertained from a reading of the extended opinion of this court in Nelson v. Ky. River Stone & Sand Company, 183 Ky. 583.

Likewise in the case of Workmen's Compensation Board v. U. S. Coal & Coke Company, 196 Ky. 883, it

will be found that this court in an interpretation of sections 4897, 4898 and 4899 has held that where a period of total temporary disability is followed by a period of permanent partial disability, the period of time for which an allowance is made for temporary total disability should be deducted from the maximum period fixed for a permanent partial disability, but that the amount allowed for such total temporary disability should not be deducted from the amount allowed for permanent partial disability where the maximum allowance has not been reached. The reasoning in that case seems to be conclusive that the circuit court erred in striking out the allowance made by the board for temporary total disability.

Nor is the opinion of this court in Wirth Lang Company v. Meece, 211 Ky. 520, in conflict with what we have said. In that case there was an amputation of a thumb with its metacarpal bone, a loss specifically provided for in section 4899, and the court held that there can be only an award for 65% of his average weekly earnings for the periol fixed in the statute, and that there could be no additional allowance under section 4897 for a period of temporary total disability up to the time of amputation, during a period when there was an effort by the doctors to save the member. There the provision in lieu of all other compensation for injuries enumerated in the schedule was applied under the express terms of the statute, while here we have a situation not embraced within that provision, and a claim for compensation during a temporary period of total disability following an operation which was necessary immediately after the injury.

The judgment is reversed, with directions to enter a judgment in the circuit court upholding the award of the board of compensation in all respects except as to the award for the loss of a leg, and directing as to that the board make an award under the concluding provision of section 4899 as indicated in the opinion.

Whole court sitting.