## Poquet v. Borderland Collieries Co. et al.

June 22, 1948.

Rehearing denied October 15, 1948.

G. R. Blackburn for appellant.

Hobson & Scott and James W. Wine, Jr. for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER
—Affirming.

On August 23, 1940, while working as a coal driller for appellee, appellant sustained a break in his left leg between the knee and ankle, from falling slate. In October, 1942, his leg was rebroken and reset, but it did not heal properly. He was re-employed by the Company March 1, 1943, at light work, viz., "picking bone." He continued in this work until April 20, 1945, when he was discharged because of curtailment in work; since then he has not engaged in gainful employment. His injury progressed to such an extent that, on June 2, 1945, his leg was amputated at a point five or six inches below the knee. Thereafter appellee purchased an artificial leg, which appellant was unable to wear because it bruised his leg; thereupon he obtained, and since has been using, a "peg leg." On several occasions he has requested appellee to provide him with work suitable

to his physical condition, but these requests have been rejected. Since the time of his injury, appellee has furnished him with groceries, rent, fuel, electricity, doctor bills, and insurance, in the amount of $2,586.38, and in addition thereto cash in the amount of $22.10. The above figures were admitted by appellant, although appellee contended the amounts to have been approximately $300 more. Dr. L. F. Boland testified that appellant's physical condition is such that he cannot successfully perform work requiring stooping and lifting, and that he cannot load coal; but if he should use an artificial leg, his capacity to perform work would be increased.

The Referee allowed appellant compensation for temporary total disability for a period of 154 5/7 weeks at the rate of $15 per week, about which no adverse contention is made; and for permanent partial disability of ninety per centum to the body as a whole at the rate of $10.80 per week for a period of 180 2/7 weeks, with interest on past due installments at the rate of six per centum per annum from due date until paid; the award to be credited with the sum of $2,586.38, by reason of the necessaries furnished appellant during the period of disability. On review by the full Board, the finding of the Referee in respect to the temporary total disability was adopted; but his finding in respect to the permanent partial disability was reduced to $5.85 per week for a period of 180 2/7 weeks, with interest at the rate of six per centum per annum on all past due installments; the total award, however, to be credited with the sum of $2,586.38, representing advancements made by way of furnishing of necessaries during the whole period of total disability. On appeal, the Circuit Court affirmed the full Board award. Thereafter appellant moved the Circuit Court to enter judgment in accordance with the award of the full Board, direct the Circuit Court Clerk to issue an immediate execution on the judgment, and further prayed: "for all the compensation and interest due him (appellant) under and pursuant to said award of the Workmen's Compensation Board of Kentucky, and he moves for such other and further relief as will enable him to enforce collection under said award, and in support of this motion, and as part of it, the plaintiff attaches his affidavit."

The affidavit set forth the fact that the award had

been made, but alleged that no payment of compensation ever was made to him for his injuries, other than the payment to him of $22.10, and the extension of credit to him in the amount of $2,586.38. He further set forth in his affidavit: "That he tried to get his employer to pay compensation regularly, as the law provides, but it refused to so do."

The motion was filed as if it were a separate action, but the Circuit Court consolidated it with the original appeal from the Board's award, and entered another judgment whereby he increased the amount of the credit due appellee to the extent of $22.10, which represented the cash payment made to appellant by appellee during the period of disability, and which the Board had overlooked in its original award; no complaint has been made in respect to this modification. Two appeals have been filed in this Court, the first from the original and the second from the supplemental judgment; but since the supplemental judgment covers all matters contained in the original, we will treat them as one appeal.

The principal complaint urged for reversal of the judgment is that appellee "refused to pay the injured employee any compensation at all, but permitted him to remain in its house, and furnished him with goods, wares, merchandise, rent, etc., amounting to $2586.38, and also advanced him the very liberal sum of $22.10 in cash, * * *."

It seems to be the contention of appellant that, after accepting this method of payment over a period of seven years, he now is entitled to a judgment for a lump sum, without being charged with the value of the necessaries of life which appellee furnished from its own store throughout that period of time. One of his minor contentions is that, if appellee had paid him in cash, in accordance with KRS 342.040, he would have been enabled to purchase the necessaries furnished him by appellee at a reduced price from competitive stores. The answer to this argument is that he accepted the merchandise and other commodities necessary to his and his family's maintenance, and now cannot be heard to complain of these credits. It is true that the method of payment adopted by appellee is not in accordance with the Statute above referred to, and we would not be

understood to condone appellee's action in this respect; but appellant received the benefits of the method which he himself approved, and he is estopped to complain after having received such benefits.

The next complaint is that, if the Court did not err in allowing credit for the supplies furnished appellant, it did err in allowing that part of it shown to be in excess of what like purchases would have cost appellant at other stores. The evidence relied on in this respect is the testimony of appellant himself, who stated that he could have purchased like supplies at ten to twenty per cent less in competitive stores. This testimony amounts to no more than a conclusion of the witness, and is not sufficient to substantiate his claim.

Another argument urged in support of appellant's contention that the judgment should be reversed is that appellee failed to furnish him with light work in a job suitable to his capacity and physical condition after April 20, 1945, which would have enabled him to pay off the account for merchandise which was created while appellee wrongfully refused to pay compensation regularly as provided by KRS 342.040. We know of no provision of the Statutes requiring an employer to furnish an injured employee light work; although we have held that, if he does furnish work suitable to the employee's capacity and physical condition, the employer may be credited with the wages paid such employee for the performance of such suitable duties as may be imposed upon him, provided such wages be equal to or greater than those received by the employee prior to his injury. Consolidation Coal Co. et al. v. Ditty, 286 Ky. 395, 150 S. W. 2d 672. However, we never have applied this rule to a case where the compensation was for the loss of a member or part-member of a person's body which did not extend to a partial injury to the remainder of the body of the injured person.

The Referee found that the body of appellant was disabled to the extent of ninety per centum, apparently on the testimony of Dr. Boland to the effect that appellant cannot and will not be able successfully to perform work requiring stooping and lifting, such as is required in loading coal. However, there was no testimony to the effect that the injury sustained affected the use of

any portion of the body above the leg at the place of its amputation; that being true, the rule applied in Mills v. Mills & Connelly et al., 214 Ky. 675, 283 S. W. 1010, 1011, is applicable. There the injury resulted in a disability almost if not identical to that in this case; the Court said:

"Obviously, therefore, the statute had in contemplation, when it provided for the loss of a foot, that part of the leg at or below the ankle joint, and when it provided compensation for the loss of a leg it appears to have had in contemplation the loss of so much of that member as deprived it of its function as a support for the body and as a means of locomotion.

"Keeping in mind that the foot is primarily a part of the leg, which is designed to be a support for the human body as well as a means of locomotion, but that the statute for its purposes has separated the foot from the leg, it cannot be said with any degree of sound reason that the amputation at a point 7½ to 8 inches above the ankle joint is not more than the loss of a foot. Certainly such a loss brings about a greater disability than the loss of a foot at or about the ankle.

"On the other hand such an amputation, which leaves unimpaired and free for use both the hip joint and the knee joint, cannot reasonably be said to be the loss of a leg. Such a loss does not create as great a disability as would an amputation impairing seriously or destroying the use of the knee joint as a means of locomotion. Our conclusion is that the injury in this case is more than the loss of a foot and less than the loss of a leg, and seems to be necessarily embraced in that class of 'all other cases of permanent partial disability' provided for in the concluding clause of section 4899 (now KRS 342.105 and 342.110).

"It results on this branch of the case that neither the award of the board for the loss of a leg nor the judgment of the circuit court for the loss of a foot only can be sustained; but the circuit court should have remanded the case to the board, with directions to fix the compensation according to the provisions of the concluding clause of that section, but to so fix it that the compensation for such injury in the aggregate would be less than

for the loss of a leg, and greater than that for the loss of a foot, according to the percentage of disability and the other considerations mentioned in that clause."

The full Board award, which was affirmed by the Circuit Court, recognized the rule stated in the Mills case, supra, and allowed disability in an amount midway of the compensation allowable for the loss of a foot and that allowable for the loss of a leg, under the Workmen's Compensation Act. KRS 342.105.

We are of the opinion that the judgment should be, and it hereby is, affirmed.