Overton **HOLT**, Appellant,

v.

**WEST KENTUCKY COAL COMPANY,**
Appellee.

Court of Appeals of Kentucky.

Oct. 6, 1961.

Laurence T. Gordon, Madisonville, for appellant.

Thomas A. Mitchell, Gordon & Gordon & Mills, Madisonville, for appellee.

CLAY, Commissioner.

This workmen's compensation case presents the question of the amount which properly may be awarded to an employee who has lost the lower part of his leg by amputation as the result of an industrial accident. The circuit court confirmed the Board's award, which limited compensation under the provisions of KRS 342.105 and 342.110. The employee appeals on the ground that he should have been allowed total and permanent disability benefits under KRS 342.095.

The basic problem is an old and difficult one. Because of legislative amendments and the rather sinuous development of our case law under the above statutes, the solution of the problem is not as clear-cut as it once might have been.

As a result of an accidental injury, the employee's left leg was amputated about four inches below the knee. The Board made the following findings: (1) the in-

*jury* was confined to the leg, but (2) the employee was *totally disabled* from performing the only kind of work for which he was trained. The question is whether the Board should award the employee compensation for total disability under KRS 342.-095 or was required to limit the award under the provisions of KRS 342.105 and 342.-110. The issue before us is one of law.

KRS 342.095 is a general statute providing a percentage formula for determining the amount of an allowable award where an injury or occupational disease "causes total disability for work".

KRS 342.105 is in the class known as "schedule benefits" statutes. (More accurately descriptive would be "specified injury".) It provides a schedule of benefits for the *loss* of designated body members. For example, it provides: "(19) For the loss of a leg, 65 percent of the average weekly wages during 200 weeks." As an original proposition, it would seem the intent of the legislature in the enactment of KRS 342.105 was to fix arbitrarily the amount of the award for injuries resulting in the *loss* of a member, *regardless of the extent of disability*. If this were not so, there would be no reason for the statute.

We have, in numerous cases, assumed such to be its meaning. In Black Mountain Corporation v. Letner, 303 Ky. 807, 199 S.W.2d 611, 612, it was stated flatly: "Where there is an actual severance the recovery is limited to the amount specified in the specific schedule statute."

Strangely, that was not a severance case. Even more strangely, the parties have not cited, and we have been unable to discover by extensive research, a single Kentucky *severance* case wherein we have considered whether or not KRS 342.105 (or its predecessors) *exclusively* fixed the benefits allowable for such an injury. However, as indicated in the Black Mountain Corporation case, just cited, apparently we were committed to this theory. It is generally followed in other jurisdictions where there is

a clean-cut loss without complications. 99 C.J.S. Workmen's Compensation § 311, page 1123; Coker v. Armco Drainage and Metal Products Co., 192 Tenn. 10, 236 S.W.2d 980; New Amsterdam Casualty Co. v. Brown, 81 Ga.App. 790, 60 S.E.2d 245; Smith v. Industrial Commission, 69 Ariz. 399, 214 P.2d 797; Hlady v. Wolverine Bolt Co., 325 Mich. 23, 37 N.W.2d 576; Lappimen v. Union Ore Co., 224 Minn. 395, 29 N.W.2d 8; Raffual v. Oneida Bleachery, Inc., 280 App.Div. 1007, 116 N.Y.S.2d 760; Roular v. Henry Forge & Tool Co., 232 App.Div. 857, 249 N.Y.S. 17; Dowling v. Church E. Gates & Co., 253 N.Y. 108, 170 N.E. 511.

The reason for this construction of such a statute is thus stated in Larson, The Law of Workmen's Compensation, Volume 2, Section 5810 (page 42):

"This (the theory of schedule benefits) is not, however, to be interpreted as an erratic deviation from the underlying principle of compensation law—that benefits relate to loss of earning capacity and not to physical injury as such. The basic theory remains the same; the only difference is that the effect on earning capacity is a conclusively presumed one, based on observed probabilities in many similar cases, instead of a specifically proved one, based on the individual's actual wage-loss experience. The effect must necessarily be a presumed one, since it would be obviously unfair to appraise the impact of a permanent injury on earning capacity by looking at claimant's earning record for some relatively short temporary period preceding the hearing. The alternative is to hold every compensation case involving any degree of permanent impairment open for a lifetime, making specific calculations of the effect of the impairment on claimant's earnings each time claimant contends that his earnings are being adversely affected. To avoid this impossible administrative task, the ap-

parently cold-blooded system of putting average-price tags on arms, legs, eyes and fingers has been devised."

See Huggins v. B. C. Farrell & Co., 169 Tenn. 77, 82 S.W.2d 870, 871; Eubanks v. Barnsdall Oil Co., 169 Okl. 31, 35 P.2d 873; Shaw v. Rosenthal, 112 Ind.App. 468, 42 N.E. 383; Thatcher v. Weinstein, 154 Pa.Super. 368, 35 A.2d 549.

Although it did not involve the physical loss of a member, we have a leading case in Kentucky on the restrictive character of this statute. In Kentucky Cardinal Coal Corporation v. Delph, 296 Ky. 295, 176 S.W. 2d 886, the employee's hand and fingers were crushed. The Board awarded him compensation for total and permanent disability, which was established by the proof. It was held that since the injury was limited to the hand and fingers, the award was limited by KRS 342.105 and the Board could not properly make an award under KRS 342.-095. Thus the *exclusive* character of this statute was established in Kentucky.

Plausible arguments are made against such a construction of the statute. The first is that it is a *permanent partial* disability statute and consequently does not apply if the employee is *totally and permanently* disabled. It is pointed out that the heading of this statutory section is "Compensation for Permanent Partial Disabilities". Such heading, however, does not constitute any part of the law. KRS 446.-140. The body of the section says nothing about "partial disability".

It is true that the following section, KRS 342.110(1), does begin with this language: "In all *other* cases of *permanent partial disability* * * *." (Our emphasis.) This would seem to indicate the legislature recognized KRS 342.105 as relating only to "permanent partial disability".

It is argued that if the Board finds the employee is only partially disabled (regardless of the extent), the "schedule benefit" statute applies, but if the Board finds the employee is totally and permanently dis-

abled, it does not apply. Nothing in KRS 342.105 points to such an interpretation. If the "permanent partial disability" aspect has any significance, it may be said that the legislature was arbitrarily placing all severance cases in this category regardless of the actual extent of disability. We return to our original proposition that there is no justification for this statute in its present or past form unless it established, finally and exclusively, what may be termed a fixed and final valuation on the loss of a member. (Larson refers to it as a "price tag".) We do not believe the legislature, by another statute, intended to change the accepted purpose and function of KRS 342.105.

The next argument is that the legislature in 1948 made a significant amendment to this statute. Theretofore it had provided that the compensation should be "in lieu of all other compensation" (with an exception not important here). In 1948 the legislature deleted the quoted language. On the face of it, this would seem to alter the exclusive nature of that law.

The difficulty with this position is that if such an interpretation is correct, the legislature simply emasculated the whole statute. It would have no significance whatever unless the limitations fixed therein governed the amount of the award. If the employee is to be compensated solely on the basis of the extent of his disability, it is wholly immaterial whether that disability results from an injury to the neck, an occupational disease of the lungs, or the loss of a leg. Perhaps this is only fair and the legislature should so provide. The trouble is that the legislature has selected a special class of injuries which involve the loss of a member (or the loss of certain specified senses) and treated this type of injury in a special manner without regard to disability. The exclusive character of this statute is what gives it significance.

It may also be noted that when the words "in lieu of all other compensation" were deleted from the statute in 1948, additional language was added which would have re-

sulted in awkwardness of expression unless the quoted words were omitted. It may be said that the change made by the legislature was one of form rather than substance. We must again observe that unless this statute is exclusive, it is without meaning.

We now come to a most persuasive argument on behalf of the employee. It is that under our case law interpreting KRS 342.*110* prior to 1960 (and by virtue of a 1960 amendment), an employee who has suffered an *injury* to a member may be awarded an amount substantially greater than if he has actually suffered a *loss* of that member by amputation, even if the disability is the same, which simply does not make much sense. True, that is the situation as it has existed (under some of our cases) and as it now exists. Perhaps it is indefensible from the standpoint of policy. Our only answer is that the legislature writes the compensation laws. As much as we might wish, we cannot change what the legislature has written in the interests of what we consider fair. However, because the award in this case was in part based upon KRS 342.110, we must decide whether its liberalized provisions encompass the particular loss of a member here involved.

Since 1946 KRS 342.110 has been correlated with KRS 342.105. (Originally the provisions of both statutes were combined in one. Section 4899, Carroll's Kentucky Statutes, 1936.) The former provides a compensation formula for "permanent partial disability" *other* than that specified in the latter. Prior to 1960, KRS 342.110 provided without qualification:

"In no event shall compensation for an injury or disability to a member ex- · ceed the amount allowable for the loss of such member." (Under KRS 342. 105.)

The Board and this Court soon departed from this mandate. In Department of Mines & Minerals v. Castle, Ky., 240 S.W. 2d 44, the employee injured his leg, which

resulted in its stiffening and shortening. He was totally and permanently disabled from performing the work for which he was trained. We held that if the Board finds total and permanent disability, KRS 342.-105 and 342.110 have no application regardless of whether the nature of the injury falls within the scope of those statutes. In that case we quoted the following from the Board's opinion (at page 45 of 240 S.W. 2d):

"* * * in instances where the location of an injury is upon or within a member, but which *extends* beyond the member so that it *adversely affects* a workman's general ability to labor, or which *limits* his occupational opportunities to obtain the kind of work he is able to do, a recovery on the basis of the loss of a member is *inadequate,* since the *disability* is greater than the loss of a member and is not simply an *injury* to a member." (Our emphasis.)

This language, as a reason for not applying the restrictive provision of KRS 342.-110, cannot survive careful analysis. In the first place, it evades the question. The issue did not involve the *adequacy* of compensation. The question was whether the Board was required to follow the specific directions of the legislature and apply the designated formula in making the award, regardless of the disability.

■ In the second place, the Board slipped into the trap of confusing "disability" with "loss" and "injury". Just how can "disability" be "greater than the loss of a member" (or the same or less for that matter) or something more (or less) than "injury to a member"? The concepts cannot be equated. Disability, in the Workmen's Compensation law, is the extent to which earning capacity is impaired. See Anderson v. Northwestern Motor Co., 233 N.C. 372, 64 S.E.2d 265, 266; and Dail v. Kellex Corp., 233 N.C. 446, 64 S.E.2d 438, 440. True, the "loss" or "injury" constitutes the basic *cause* of the disability. But the

latter simply cannot be measured in the terms of the former.

The foregoing criticisms pale to insignificance when we examine the net effect of this quoted language. It apparently says everything, and it says nothing. *Every* compensable injury "adversely affects a workman's general ability to labor" or "limits his occupational opportunities". That is what causes the employee's disability. That is why he is allowed workmen's compensation. But the legislature apparently chose to predetermine the maximum extent of disability for losses of or injuries to body members.

Disability for which compensation is normally allowed is for disability to the body as a whole which impairs the employee's ableness to labor, thereby reducing his earning capacity. Insofar as compensation is concerned, there is no such thing as disability to a member of the body. Baier v. Schnell, Ky., 232 S.W.2d 587. Consequently, if an employee injures a leg, he is compensated because that injury, actually or presumptively, adversely affects his capability to work. But the legislature, by the restrictive language of KRS 342.110, in effect had said that this disability test should not be applied beyond the limits prescribed for the loss of a leg. Simply restating the test which would apply in the absence of the restrictive language furnished no basis for skirting the prohibition.

However, the Castle case has been followed. The theory that the Board may find total disability and thereby bypass KRS 342.110 (relating to an *injury* rather than a *loss*) has been perpetuated in Hardy Burlingham Mining Co. v. Sawyer, Ky., 254 S.W.2d 350, and Clark v. Gilley, Ky., 311 S.W.2d 391. Such a view was not accepted in at least two other cases involving substantially the same problem. In Patton v. Travis, 298 Ky. 678, 183 S.W.2d 956, the employee's hand was so crushed as to cause a permanent injury. The Board awarded total and permanent disability benefits. We reversed on the ground that the injury did not affect his body as a whole or his ability to labor *to a greater extent than if his hand had been severed.* Therefore his compensation was limited to the allowance specified in KRS 342.105. We there said (at page 957 of 183 S.W.2d) :

> "To be entitled to greater compensation for a mere injury to his hand than for a complete severance thereof the appellee should have evidence to show, or from which it may reasonably be inferred, that his injury is of such nature as to more adversely affect his body, or his mind, or his sense of pain, or his ability to labor, or his opportunity to obtain employment, *than would be the case had there been a complete severance."* (Our emphasis.)

Similarly in Caney Creek Mining Co. v. Rager, Ky., 264 S.W.2d 677, we held that where the *injury* is limited to a member, the award must be limited under the provisions of KRS 342.105 and 342.110, despite the fact that the disability extends to the body as a whole (which is true in every compensation case). Here we said what has heretofore been stated in this opinion, i. e., *any* compensable injury affects the body as a whole (and impairs the employee's ability to work) but KRS 342.105 and 342.110 sought to limit compensation *according to the nature of the injury* and *not the extent of the disability.*

From the above discussion of our *injury* cases, it is regrettably clear that, at the time of the accident here involved, our law was in a state of confusion with respect to the meaning of the restrictive provision of KRS 342.110 (which sought to limit compensation for *injuries* as compensation for *losses* was limited by KRS 342.105). The employee's position is that we should apply the reasoning of our most liberal *injury* cases to the *loss* cases. There are three reasons why this should not be done. The first is that it has never been done in Kentucky. The second is that, as we have heretofore pointed out, the generally accepted purpose of a "schedule benefits"

statute such as KRS 342.105 is to place arbitrary valuations (or, as Larson puts it, "price tags") on specific body members. Unless the schedule is exclusive, it is meaningless.

The third reason is that the legislature, though from time to time amending KRS 342.110 in an attempt to cope with this problem as it relates to *injuries* rather than *losses*, has not made a change in this respect in KRS 342.105 since its original enactment. It is still the same specific injury—fixed benefits statute as it was in the beginning.

It is significant that in 1960 the legislature amended both KRS 342.095 and 342.-110 to provide:

"Compensation for an injury or disability to a member shall not exceed the amount allowable for the loss of such member unless the effects of the injury or disability extends beyond the member to the body as a whole so that it adversely affects a workman's general ability to labor, or limits his occupational opportunities to obtain the kind of work he is customarily able to do."

(The use of the word "disability" twice in this quoted paragraph is meaningless and confusing. As pointed out earlier in this opinion, the Workmen's Compensation Law does not and could not sensibly allow compensation for "disability to a member". "Disability" relates to the body as a whole.)

The language after the word "unless" is in substance the identical language from the Board's opinion in Department of Mines & Minerals v. Castle, Ky., 240 S.W.2d 44, 45 (which we have quoted on page 158 of this opinion). This liberalizing language would seem to emasculate the apparent limitations of those sections (and therefore extinguishes the problem in the *injury* cases which we have above discussed). The legislature did not, however, add a similar provision to KRS 342.105.

The end result is that an employee under the present law may be awarded greater compensation for disability arising from an *injury* to a member than is allowable for the *loss* of that same member. Under some of our cases that was the law prior to 1960, and clearly it is the law now. Even if our sense of fairness and consistency is jolted by this result, it is not in our province to repeal KRS 342.105. The history of the changes in the compensation law has been one of compromises, which necessarily have created inconsistencies, so the courts are not warranted in rewriting the law simply because it contains inconsistencies. This we would do if we adjudged that the total compensation for the loss of a limb specified in this section is not restricted to the fixed formula therein prescribed.

It is therefore our conclusion that in all cases in which the employee's disability is caused solely by *severance* of a member of the body, KRS 342.105 prescribes the exact formula for the award of compensation, and the Board may neither increase nor decrease that amount regardless· of the actual disability resulting therefrom.

This brings us to the only other question presented in this case, which involves the amount of the award. While the Board properly took the view that even though the employee was totally disabled he was not entitled to compensation under the total disability statute, KRS 342.095, it allowed him compensation under 342.110 (which relates to partial permanent disability resulting from an *injury other* than the *loss* of a member under KRS 342.105).

The reason the Board followed this course is because it found the employee lost more than a foot but less than a leg. It was therefore determined that since the loss did not precisely fit any category specified in KRS 342.105 it fell into the class of "other permanent partial disability" under KRS 342.110. In this line of reasoning the Board apparently intended to follow the cases of Mills v. Mills & Connelly,

214 Ky. 675, 283 S.W. 1010 and Poquet v. Borderline Collieries, 308 Ky. 241, 213 S.W. 2d 607. While the opinion in the first case (extensively quoted in the second) did purport to place this kind of injury in the "permanent partial disability" class, *both of those cases held that the amount of the award must be limited by the schedules fixed in what is now KRS 342.105.*

The Board in the present case completely departed from KRS 342.*105* and made its award under a formula prescribed in KRS 342.*110*. (This award was $27 per week for 55 weeks and $8.40 a week for 345 weeks.) The employee contends that the award should have been for 450 weeks instead of the total of 400.

It is our view that since this is a *severance* case, it is governed entirely and exclusively by KRS 342.105, not by 342.110. While this was the effect of the rulings in the two cases we have just above cited, we think those cases unnecessarily limited the amount of compensation when it was decided that the loss of more than a foot was less than a leg. In our opinion if any substantial part of the employee's leg is amputated, he has lost his leg. In the present case the amputation was four inches below the knee. This constitutes loss of the leg and the employee is entitled to the compensation prescribed for such loss. To the extent that the cases of Mills v. Mills & Connelly, 214 Ky. 675, 283 S.W. 1010 and Poquet v. Borderline Collieries, 308 Ky. 241, 213 S.W.2d 607 are in conflict with this conclusion, they shall no longer be followed.

The excellent opinion of the trial judge conformed to the views we have expressed with respect to the principal problem involved in this case, but for the error of the Board in fixing the amount of the award the judgment must be reversed.

The judgment is reversed with directions to remand the case to the Workmen's Compensation Board for the entry of an award

under KRS 342.105 consistent with this opinion.

MILLIKEN, J., dissents from so much of the opinion as decides that KRS 342.105 fixes the amount of compensation allowable, it being his opinion that this statute simply prescribes the minimum allowance for the loss of a member and that the actual disability of the employee may be inquired into for the purpose of determining if he is entitled to additional compensation.