ILLINI EXPLORATION, INCORPORATED, Appellant,

v.

Richard Arnett ASHBY and Workmen's Compensation Board, Appellees.

Court of Appeals of Kentucky.

June 28, 1968.

yond the loss of a part of his arm to the body as a whole so that it adversely affects his general ability to labor and limits his occupational opportunities to obtain the kind of work he is customarily able to do.

The appellant takes the position that Ashby is entitled only to compensation for the loss of an arm under KRS 342.105, commonly known as the "price tag" statute.

The present body of the Workmen's Compensation Law is the result of nearly fifty years of legislative enactments, reenactments, modifications, and amendments. It is sometimes difficult, if not impossible, to determine the legislative intent of the law as it is presently constituted in the statute.

Let us first note that under KRS 342.105, which is the "price tag" statute and which provides for the loss of an arm as in the present case, there is no specific provision for allowing compensation in excess of the amount fixed by the statute for specific injuries, although this statute does not provide that the specific amount for the specific loss of a member is exclusive.

Immediately following KRS 342.105, which is headed "Compensation for enumerated permanent partial disability," we have KRS 342.110, which is headed "Other permanent partial disability; compensation." Subsection (2) of the latter statute provides:

> "Compensation for an injury or disability to a member shall not exceed the amount allowable for the loss of such member unless the effects of the injury or disability extends (sic) beyond the member to the body as a whole so that it adversely affects a workman's general ability to labor, or limits his occupational opportunities to obtain the kind of work he is customarily able to do."

In the case of Mills v. Mills & Connelly, 214 Ky. 675, 283 S.W. 1010, this court held that the amputation of the leg of an industrial worker seven and one-half inches below the knee was not covered by the "price tag" statute because the injured man

---

Leonard Price, Louisville, B. M. Westberry, J. Wendell Roberts, Marion, for appellant.

L. B. Lawton, Henderson, for appellees.

EDWARD P. HILL, Judge.

This is an appeal from a judgment approving an award by the Workmen's Compensation Board allowing Richard Arnett Ashby total permanent disability for the loss of a part of his left arm under KRS 342.110(2), upon the theory, as found by the Board, that Ashby's disability extends be-

lost more than a foot and less than a leg and that the part of the statute in effect at that time pertaining to "Other permanent partial disability" determined his compensation.

In the very recent case of Johnson v. Elkhorn & Jellico Coal Company, Ky., 422 S.W.2d 886, this court held that a workman who sustained an injury to the hand, the result of which extended into or affects his shoulder and spine so that it adversely affected the workman's general ability to labor and limited his occupational opportunities to obtain the kind of work he was customarily able to do, was entitled to additional compensation under KRS 342.110.

In Research Report No. 20, issued in 1963 by the Legislative Research Commission, we find the following comment relative to the statute in question at page 9:

"A 1960 amendment allowed compensation for an injury or disability to a member to exceed the amount allowable for loss of such member, if the effects of the injury or disability extend beyond the member."

In a discussion of "schedule benefits," or special injuries, § 58.10, Larson's Workmen's Compensation, vol. 2, p. 42, states:

"This is not, however, to be interpreted as an erratic deviation from the underlying principle of compensation law—that the benefits relate to loss of earning capacity and not to physical injury as such."

In regard to "Excessiveness of schedule allowances," Larson states in § 58.20, vol. 2, p. 44, that:

"The great majority of modern decisions agree that if the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive."

We are told by the Workmen's Compensation Act (KRS 342.004) that the act should be liberally construed.

We think KRS 342.105 and KRS 342.110 should be read and considered together. And in so doing, it is concluded that in situations wherein the effect of the injury to or loss of a member extends beyond the member so that it adversely affects the workman's general ability to labor, or limits his occupational opportunities to obtain the kind of work he is customarily able to do, he is entitled to compensation for such disability and is not limited by the schedule of benefits provided in KRS 342.-105.

In cases where an injury to or loss of a member affects or extends to other parts of the body so as to interfere with their efficiency, it does not seem reasonable that the Legislature intended that a greater compensation should be allowed to a person for an injury to his arm, which was not amputated, than to a person who lost his arm by amputation.

Ashby was and had been working as a "roughneck" in the oil fields for thirteen years before his injury. He was sixty-three years of age without previous serious injury or disability. His arm was caught in a "cat line" (a windlass pulley and wire cable arrangement) and was severed, leaving Ashby with a dislocated elbow and other injuries to his shoulder.

Dr. George Welker, Jr., the only physician to testify, stated as follows:

"Q. In your opinion, sir, does Mr. Ashby have any loss of use of his left shoulder as a result of the injury which he sustained on March the first?

"A. Yes, he would have partial loss of injury—or partial loss of use of his left shoulder.

"Q. What's the basis of that, Doctor?

"A. Well, because of the disturbance to the nerves in the lower part of the arm; he has peculiar sensations, and the twisting of the lower arm when he was caught in the accident has wrenched it. The fact that he has no further need to use

the arm very much has caused some atrophy of his shoulder and disuse, arthritis."

\* \* \* \* \* \*

"Q. Now, the dislocation of the left elbow joint that you have referred to in your testimony, considering that and that alone, without the amputation that Mr. Ashby unfortunately suffered, what is your opinion as to disability with the dislocated left elbow joint?

"A. Considering it apart from the amputation?

"Q. Yes, or is it tied in so with the amputation that \* \* \*

"A. (Interposing) Oh, it's tied in with the amputation; the whole thing is tied in.

"Q. In other words, the whole thing \* \* \*

"A. (Interposing) Oh, yes.

"Q. All of his disability is tied in with the amputation?

"A. Oh, yes."

\* \* \* \* \* \*

"Q. Now, Doctor, if you can with a reasonable medical certainty, with the amputation that Mr. Ashby had of the left forearm, would that injury alone— the amputation of the left forearm—prevent him from performing his regular duties as a laborer as a roughneck in the oil fields?

"A. It would preclude, absolutely preclude his normal and regular duties; absolutely.

"Q. And I believe, if I understood you correctly, you said that all of his difficulty or disability which you discovered and testified about stems from, and you attribute to the injury resulting in the amputation of the left forearm. Is that correct, Doctor?

"A. Yes sir."

The evidence supports the award. There was no countervailing evidence requiring the Board to rule otherwise.

The judgment is affirmed.

WILLIAMS, C. J., and MILLIKEN, PALMORE, and STEINFELD, JJ., concur.