**PRINCESS COALS INCORPORATED,**
**Appellant,**

**v.**

**Curtis STAPLETON et al., Appellees.**

Court of Appeals of Kentucky.

Sept. 27, 1968.

As Modified on Denial of Rehearing
Dec. 6, 1968.

Fred G. Francis, Howard, Francis & Howard, Prestonsburg, for appellant.

G. C. Perry, III, Perry & Taylor, Paintsville, for appellees.

MILLIKEN, Judge.

The question involved here is whether the Workmen's Compensation Board calculated its award under the proper section of the Compensation Act.

The claimant, Curtis Stapleton, a thirty-five-year-old coal miner, lost his middle finger on his right hand and received serious injury to three other fingers in an accident on September 3, 1965, and the Board

based its award on the section of the Act governing specific losses, saying: "Regardless of the extent or degree of plaintiff's actual disability, the Board is powerless to award him any greater or other compensation than that provided by KRS 342.105, relating to enumerated or scheduled injuries," citing Holt v. West Kentucky Coal Company, Ky., 350 S.W.2d 155 (1961). The circuit court reversed declaring that the Board's basis of calculating the award was "clearly erroneous," and remanded the case to the Board to calculate the award on the basis of injury to the body as a whole. After a period of temporary, total disability, Stapleton returned to work in early November, 1965, and suffered no diminution in pay.

The gist of the testimony is that besides losing the middle finger Stapleton received severe comminuted fractures of his ring finger with lacerations of that finger and a laceration of its tendon which resulted in a total flexion contracture of that finger, and possibly some limitation of motion and pain in the wrist area. The Board also found ankylosis in the index and little fingers and granted full awards under the specific schedule of KRS 342.105 for the injuries to them. No complaint is made by the employer about the amount of the awards for the various injuries to the injured hand, but it does resist any enlargement of the award on the basis of injury to the body as a whole.

Stapleton has been favored by his employer with work he can do, undoubtedly experiences difficulty in performing some of the things he could do before the injury to his hand, but there is, indeed, no direct evidence that his injury extended beyond the hand although two physicians estimated his disability at forty to forty-five percent disability to his body as a whole. We concede that any injury affects the body as a whole, but it obviously would be a most disturbing administrative problem for the Board and for the courts to have to evaluate in each specific case just how much the loss of a finger, for example, affected

an injured man's body as a whole, and that difficulty, and that alone, is the reason why specific schedules for such injuries are a part of all workmen's compensation laws.

In Holt, relied on by the Board, this court confined an award to scheduled benefits under KRS 342.105 where an employee's leg was amputated four inches below his knee even though it was admitted that he was totally disabled from performing the only kind of work for which he had been trained, yet seven years later in Cabe, Commissioner v. Stamps et al., Ky., 429 S.W.2d 361, we approved an award for total, permanent disability where an injured employee lost one eye in an accident and had had very little sight in the other eye since birth; and in Illini Exploration, Inc., v. Ashby and the Workmen's Compensation Board, Ky., 430 S.W.2d 330 (1968) we approved an award for permanent, total disability where the injured employee lost part of an arm but was found by the Board to be no longer able to do the ordinary manual labor he was fitted to do. In each of these opinions this court quoted, or partially quoted, the same section (58.10) of Larson's "Workmen's Compensation & Law."

In his discussion of the scheduled benefit or "price-tag" provisions of workmen's comcompensation laws such as KRS 342.105, Larson points out in Section 58.10, *"This (the theory of scheduled benefits) is not, however, to be interpreted as an erratic deviation from the underlying principle of compensation law—that benefits relate to loss of earning capacity and not to physical injury as such. The basic theory remains the same; the only difference is that the effect on earning capacity is a conclusively presumed one, based on observed probabilities in many similar cases, instead of a specifically proved one, based on the individual's actual wage-loss experience. * * *.* The alternative is to hold every compensation case involving any degree of permanent impairment open for a lifetime, making specific calculations of the effect of the impairment on claimant's earnings each time claimant contends that his earn-

ings are being adversely affected. To avoid this impossible administrative task, the apparently cold-blooded system of putting average-price tags on arms, legs, eyes and fingers has been devised." (Emphasis ours.) But in Section 58.20 Larson declares that, "The great majority of modern decisions agree that if the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive."

In both sub-section (3) of KRS 342.095, governing compensation for total disability, and in sub-section (2) of KRS 342.110 which governs compensation for partial disabilities other than those covered by the scheduled benefits for specific injuries under KRS 342.105, it is provided that, "Compensation for an injury or disability to a member shall not exceed the amount allowable for the loss of such member *unless the effects of the injury or disability extends beyond the member to the body as a whole so that it adversely affects a workman's general ability to labor, or limits his occupational opportunities to obtain the kind of work he is customarily able to do."* (Emphasis ours.)

 We think that it is the intention of our workmen's compensation law to compensate an injured man for the loss of his earning capacity and not merely for his physical injury as such, but we also conclude that the scheduled benefits under KRS 342.105 are all that an injured workman is entitled to receive for injuries to or severance of the parts of the body there enumerated unless the Board specifically finds as a fact on substantial evidence specifically summarizing the reasons for its findings, that the scheduled injury covered by KRS 342.105 does extend *"beyond the member to the body as a whole so that it adversely affects a workman's general ability to labor, or limits his occupational opportunities to obtain the kind of work he is customarily able to do."* We wish to emphasize that it is the Board's responsibility

to find the facts in the cases before it and to specifically state on what basis it finds that any of the injuries covered by KRS 342.105 are really more disabling than the scheduled benefits therein presume. In determining whether a scheduled injury creates a disability extending to the body as a whole the Board must consider two interrelated ingredients or factors. The first factor "is disability in the medical or physical sense, as evidenced by obvious loss of members or by medical testimony that the claimant simply cannot make the necessary muscular movements and exertions; the second ingredient is de facto inability to earn wages, as evidenced by proof that claimant has not in fact earned anything." Larson, Section 57.10.

The opinion of the Board intimates that it might have granted an award in excess of the scheduled benefits of KRS 342.105 except for our decision in Holt v. West Kentucky Coal Company, supra, but had it done so on the evidence in this record we might have some difficulty approving the award, for we find little in the record, other than the extent of the injuries to the hand, which supports a conclusion that Stapleton's ability to perform ordinary labor was more adversely affected than that contemplated by the scheduled benefits of KRS 342.105. One may surmise that his future occupational opportunities may be limited, yet he has had steady work at the same pay as before his accident. The real question is whether he could obtain work from another employer in case he should lose out with his present one, and that is a question susceptible to conflicting surmises at this date. (See Larson, Section 58.20 on the exclusiveness of schedule allowances).

In his appeal to the circuit court, Stapleton complains that the award of $37.00 a week granted him for his scheduled injuries should be $41.00 a week, the same as that awarded him during the period of his temporary, total disability, and in this we conclude he is not correct, for although the percentage allowable for tempo-

rary, total disability under KRS 342.095 is the same as that under the specific schedule of KRS 342.105—two-thirds of his average weekly wage, nevertheless, the maximum weekly benefits are computed under KRS 342.143 and the certification of the Commissioner of Economic Security for the year of 1965 wherein the maximum weekly benefit for permanent partial disability is set at $37.00 and the maximum weekly benefit for temporary, total disability is set at $41.00.

■ We conclude that the Board was correct in confining its award to the scheduled benefits of KRS 342.105 and that the respective weekly benefits were properly computed.

All concur.