Elmer L. BLAIR, Movant,

v.

GENERAL ELECTRIC COMPANY and Workmen's Compensation Board of Kentucky, Respondent.

Supreme Court of Kentucky.

May 2, 1978.

W. David Klingman, Frockt & Klingman, Louisville, for movant.

Charles S. Cassis, Hal Nance Bogard, Brown, Todd & Heyburn, Louisville, William L. Huffman, Director, Workmen's Compensation Board, Dept. of Labor, Frankfort, for respondent.

PALMORE, Chief Justice.

This is a workmen's compensation proceeding in which Elmer L. Blair, a die-setter.employed by General Electric Company, was awarded benefits under KRS 342.-730(1)(c) 16 for total loss of vision in one eye. Though it is clear from the evidence and, of course, could scarcely be denied, that such an injury results in some degree of permanent occupational disability, the board rejected Blair's contention that his recovery is not limited to the scheduled or "price tag" figure set by KRS 342.730(1)(c) 16, but comes within the enlarging provision of KRS 342.730(1)(c) 27.

Blair's appeal to the Court of Appeals from an order of the circuit court affirming the board's award having been unsuccessful, he sought and was granted a discretionary review by this court.

The case brings us to another milestone in the long and turbulent history of the "schedule of benefits" statute, which began in 1918 as § 4899, Carroll's Kentucky Statutes, became KRS 342.105 in the statutory revision of 1942, and was placed in KRS 342.730(1)(c) by virtue of Chapter 78, Acts of 1972.

It has been observed many times before that the originating purpose of the schedule was to determine, in advance, uniformly and presumptively, the percentage of occupational disability resulting from each of the enumerated injuries. Cf. *Holt v. West Kentucky Coal Company*, Ky., 350 S.W.2d 155, 156 (1961). Evasions of this simple scheme were, however, not long in forthcoming, and eventually it became settled that an injury to one of the scheduled members of the body could produce greater disability than a complete loss of it, in which event the schedule was held inapplicable. See *Black Mountain Corporation v. Letner*, 303 Ky. 807, 199 S.W.2d 611, 612 (1947).

In the statutory revision of 1942, what had theretofore been § 4899 of the Kentucky Statutes was split into KRS 342.105,

which contained the schedule, and KRS 342.110, which provided for "all other cases of permanent partial disability." In 1946 (Sec. 6, Ch. 37, Acts of 1946) the latter of these two statutes was amended to include the following new sentence:

"In no event shall compensation for an injury to a member exceed the amount allowable for the loss of such member."

It would seem that this plain, unambiguous little sentence would have ended the battle against the schedule, but not so. Human ingenuity was not to be so easily thwarted. As said in *Holt v. West Kentucky Coal Company*, Ky., 350 S.W.2d 155, 158 (1961), "The Board and this Court soon departed from this mandate." The new theoretical vehicle, adopted in *Department of Mines and Minerals v. Castle*, Ky., 240 S.W.2d 44, 45 (1951), was that an injury to a member may *extend beyond* the member, "so that it adversely affects a workmen's general ability to labor, . . . or limits his occupational opportunities to obtain the kind of work he is able to do," and in such case "a recovery on the basis of the loss of a member is inadequate, since the disability is greater than the loss of a member and is not simply an injury to a member."

Ten years later, in *Holt* [350 S.W.2d 155], the court sought to restore order by according to KRS 342.110 its clearly intended meaning. Prophetically, perhaps, a dissenting opinion protested that KRS 342.105 "simply prescribed the *minimum allowance* for the loss of a member," etc. (Emphasis added.) Meanwhile, despite the anemic logic of *Castle*, evidently the General Assembly found it agreeable, and by Sec. 7, Ch. 147, Acts of 1960, transferred the phraseology of that opinion bodily into KRS 342.110, so that the sentence then read as follows:

"Compensation for an injury or disability to a member shall not exceed the amount allowable for the loss of such member unless the effects of the injury or disability extends [sic] beyond the member to the body as a whole so that it adversely affects a workmen's general ability to labor, or limits his occupational opportunities to obtain the kind of work he is customarily able to do."

Developments after 1960 are reviewed in *Owens v. Kroehler Manufacturing Company*, Ky., 461 S.W.2d 103 (1971), which, in abiding by *Holt* and restricting compensation to the schedule, concludes by observing that by virtue of a 1970 legislative amendment the law now provides "that if any of the injuries or disabilities specified adversely affects an employee's ability to labor or limits his occupational opportunities to obtain the kind of work he is customarily able to do, his compensation benefits shall not be limited by KRS 342.105, and he shall be awarded compensation benefits under other applicable or appropriate sections of the Chapter on workmen's compensation. Thus, *the legislature has made a policy change which we recommended, at least inferentially, in Holt.*" (Emphasis added.)

The policy change cited in *Owens* is embraced in Sec. 3, Ch. 6, Acts of 1970, paragraph (22) of which remains unchanged today as KRS 342.730(1)(c) 27.

KRS 342.730(1)(c) 27, which until 1972 was a part of KRS 342.110, preserves the language from *Castle* [240 S.W.2d at p. 45] except for the words, "extends beyond the member to the body as a whole," which had been brought into the statute in 1960 but were omitted in 1970. In other words, the 1970 policy change mentioned in *Owens* [461 S.W.2d at p. 105] consisted simply of deleting the requirement that the effects of the injury "extend beyond" the injured member.

Thus it may be seen that the schedule of benefits for specified injuries, though intended in the beginning to be exclusive, has become just what the dissenting opinion in *Holt* (350 S.W.2d at p. 161) maintained it was all along, merely a minimum. There were too many instances in which its rigid strictures did injustice, so at first the court bent and at last the legislature fell with it.

We do not like to say this. It would better suit our preference if it were said more clearly and forthrightly in the statute itself. As we look back over its history we see a time when this court could have been

and probably was criticized for construing it inconsistently with what it plainly said and probably meant. Now we are construing it exactly according to what it says, with the hope that at long last what it says and what the General Assembly intends for it to mean have become one and the same.

It is not possible for a laboring man to lose the use of an eye and not suffer some loss of his "ability to labor" and some limitation of his "occupational opportunities to obtain the kind of work he is customarily able to do." The statute does not say that the degree of such loss or limitation shall be substantial or that it be reflected in an immediate reduction in pay. If the injury "adversely affects" the workman's "ability to labor" or his "occupational opportunities," then "his compensation benefits shall not be limited" to the schedule. Carefully read, these words are quite plain.

It is our conclusion that Blair is entitled to have his degree of occupational disability fixed by the Workmen's Compensation Board and, if the benefits allowable on the basis of that disability exceed those that would be payable in accordance with an award under KRS 342.730(1)(c) 16, to be compensated accordingly. *Cf. C. E. Pennington, Inc. v. Winburn,* Ky., 537 S.W.2d 167, 168 (1976).

The decision of the Court of Appeals is reversed with directions that the cause be remanded to the Jefferson Circuit Court for entry of a new judgment consistent with this opinion.

All concur except for STEPHENSON, J., who dissents.