**Jackie GLASS, Appellant,**

v.

**HOLLOWAY CONSTRUCTION COMPA-
NY and Kentucky Workmen's Compen-
sation Board, Appellees.**

Court of Appeals of Kentucky.

Dec. 14, 1979.

As Modified Jan. 11, 1980.

Craig W. Housman, Williams, Housman
& Sparks, Paducah, for appellant.

Jonathan Freed, Boehl, Stopher, Graves
& Deindoerfer, Paducah, for appellees.

Before GANT, HOWERTON and REYN-
OLDS, JJ.

GANT, Judge.

This is a workmen's compensation appeal
from the Pike Circuit Court which affirmed
the decision of the Workmen's Compensa-
tion Board. The Board made an award to
the claimant of disability for 62.4 weeks
pursuant to KRS 342.730(1)(c)(22) which
represents a 20% loss of use to the hand.

Appellant contends on appeal that it was
error for the Board and the circuit court to
limit the recovery to the schedule of bene-
fits. It is his position that KRS 342.-
730(1)(c)(27) applies as interpreted by *Blair
v. General Electric Co.*, Ky., 565 S.W.2d 631
(1978).

Claimant sustained his injury on March 8,
1975, in Pike County while operating a bull-
dozer. At the time he was clearing a bench
(a level area terraced one above the other)
when a tree was knocked over by another
dozer on a bench above him. The tree fell
onto his dozer and crushed his hand against
the left steering clutch. He also sustained
a minor injury to his knee. He was taken
to Mountain Regional Hospital in William-
son, Kentucky, where he was hospitalized
and underwent surgery for the repair of a
comminuted fracture of the distal portion
of the second metacarpal. The fracture
area is in the palm of the hand. A commi-
nution means that multiple fragments of
the bone result from a crushing-type injury.
He remained in the hospital for approxi-
mately ten days. Before leaving the hospi-

tal, a short-arm plaster cast was applied to his arm. Subsequent to this release he returned to Princeton, Kentucky, and began seeing Dr. George S. Beard in Paducah. Approximately one month after the accident, the plaster cast was removed and a metal splint was applied. Claimant continued to see Dr. Beard until June 23, 1976. Dr. Beard released the claimant to return to work in August of 1975, and claimant did so.

Claimant obtains jobs through a union hiring hall. He has worked semi-regularly in various jobs since being released by his doctor; however, it is not clearly established whether this is because of the injury or whether it is the normal state of affairs in his type of employment. At all of these employments he has earned wages in excess of what he was earning at the time of his injury. This appears to be the result of a union contract increase. He further testified that there are some jobs available through the union hall that he is no longer able to accept because, with the decrease in gripping power in his left hand, he cannot perform satisfactorily.

Two physicians testified in this action—Dr. Beard, the treating physician, and Dr. Jon Love, an orthopedic surgeon who examined claimant at the request of the appellee/employer. Dr. Beard testified concerning his course of treatment to the last time he saw the claimant. At that time,

> [h]e [claimant] was still having discomfort in the hand, consisting of tingling, burning discomfort which was particularly severe with exposure to cold and with excessive use of the hand. (Deposition of Dr. Beard).

he diagnosed this problem as,

> what we would consider causalgia which is part of sympathetic distrophy, that is, with a peripheral or extremity injury, particularly crushing injuries, you may get this problem and that is an over-reaction or reflex action of the sympathetic or autonomic nervous system and it causes a burning, tingling discomfort along with impairment of circulation in which there is an unusual coldness and excessive sweating. (Deposition of Dr. Beard).

He went further to testify that he advised claimant to always wear extremely warm gloves and, if at all possible, to avoid excessive use of the left hand. Although claimant is right-handed, Dr. Beard testified that claimant suffered 20% disability to the hand which translated to 8%–10% to the body as a whole.

Dr. Love, who examined the claimant on one occasion, was of the opinion that the injury resulted in a 15% functional impairment to the hand, which was the equivalent of a 7% functional impairment to the body as a whole. However, when asked directly, he also stated that claimant could operate a bulldozer. He considered the disability to be permanent but that it should remain essentially the same.

The Board, in its findings, determined that claimant had in fact suffered a work-related injury which resulted in a partial loss of use of the hand. Using the schedule of benefits table, they determined that, after a period of temporary total benefits, his injury equated with 62.4 weeks of disability. The Pike Circuit Court concurred in this result.

We are called upon to determine whether this determination was error for failure to follow the guidelines set forth in *Blair, supra.*

In *Blair*, claimant sustained a total loss of vision in one eye. The Board made its award pursuant to KRS 342.730(1)(c)(16). Chief Justice Palmore gave a complete history of the turbulent life of the schedule benefits statute and judicial interpretations of it. The dissenting opinion in *Holt v. West Kentucky Coal Co.*, Ky., 350 S.W.2d 155 (1961), said that the schedule was merely a "minimum allowance" for the loss of a member, which the Chief Justice in *Blair* called prophetic. In determining the proper method to reconcile the schedule with the enlarging statute, KRS 342.730(1)(c)(27), he concluded:

> It is our conclusion that Blair is entitled to have his degree of occupational disability fixed by the Workmen's Compensa-

tion Board and if the benefits allowable on the basis of that disability exceed those that would be payable in accordance with an award under KRS 342.-730(1)(c)(16) to be compensated accordingly. *Blair, supra* at 634.

The appellee would have us believe that *Blair* is distinguishable because there is no doubt claimant in that case suffered greater occupational disability than he would receive under the schedule but that claimant in the instant action suffered an injury only to his hand. However, we are of the opinion that the import of *Blair* reaches beyond its fact situation. This is pointed out by the additional comments on the subject in the recent decision of *Transport Motor Express, Inc. v. Finn*, Ky., 574 S.W.2d 277 (1978). There, while discussing lost wages and pointing up its use as one evidentiary factor in determining occupational disability and that KRS 342.730(1)(c)(27) and KRS 342.-730(1)(b) are complementary provisions, Justice Reed set forth a more specific test for a *Blair* situation which was stated as follows:

> The procedure in permanent partial disability cases is to first determine the degree of disability as shown by the evidence presented, including wage loss. This figure is used in the computation scheme in subsection (1)(b) to arrive at the amount due the employee. If the scheduled loss table is applicable, the amount due under that section is determined. This figure is compared with the figure arrived at by use of the (1)(b) computation formula. The employee is entitled to the greater award of these two. *Finn, supra* at 284.

We think that this passage in *Finn* and the decision in *Blair* indicate a very clear procedure to be used any time a partial disability exists and when the schedule benefits could likewise be used. First, as in all workmen's compensation cases, the Board must make a determination as to the existence of any occupational disability. Once this is determined, the benefits as calculable under KRS 342.730(1)(b) are as-

certained. This monetary figure is then compared with the compensation due under the schedule and the greater of the two is applied. Due to the open-ended awards, generally the determination by the Board that an occupational disability exists will mean that the claimant will recover under KRS 342.730(1)(b). However, this is not to say that the schedule of benefits is now defunct. In a permanent partial disability case, it must first be determined whether an injury of appreciable proportion exists and also whether there is some impairment of earning capacity. *Osborne v. Johnson*, Ky., 432 S.W.2d 800 (1968). We foresee instances where a claimant will suffer an injury to a bodily member which will result in no occupational disability but will entitle the individual to recovery based on the schedule.

In the case before the Court, the Board made no determination as to the existence of an occupational disability. Therefore, the first step in the procedure as set forth by the Supreme Court has not been followed. This Court is vested with a limited reviewing power under KRS 342.285 and 342.290. We cannot and will not direct the Workmen's Compensation Board what to find in a particular case, but in this case they must make a finding concerning the existence or nonexistence of occupational disability. Until that time we are not in a position to determine anything further.

For the above-stated reasons, this case is reversed and remanded to the Pike Circuit Court with directions to remand the action to the Workmen's Compensation Board for further findings in conformity with this opinion.

All concur.